ARCHER PARR v. OSCAR THOMPSON ET AL.

Decided February 20, 1907.

**1.—Slander—Venue.**

A slander uttered in B. County by a resident of said county to his agent, who resided in D. County, concerning a matter of business with a request by the principal that the agent would not divulge what had been told him, but which the agent, contrary to instructions and solely on his own account, did repeat in D. County, would not authorize a suit against the principal in D. County, and his plea of privilege to be sued in his own county was properly sustained. Rev. Stats., art. 1194, subd. 9, construed.

**2.—Same—Parties.**

A joint action against two or more persons for slander can not be maintained.

**3.—Same.**

Where a mortgagee of cattle secretly told his agent that he had heard that the mortgagor was about to move the cattle to another county, and instructed the agent to watch the mortgagor and the cattle but not to disclose what had been told him, the mortgagor was not guilty of slander.

**4.—Venue.**

Where in a suit against two defendants it appeared from the evidence that one of the defendants was joined in the action solely for the purpose of venue, a plea of privilege by the other defendant was properly sustained. The right to be sued in one's own county is of too much value to be lost except as provided by law.

Appeal from the District Court of Duval County. Tried below before Hon. Stanley Welch.

*D. McN. Turner* and *J. C. Scott,* for appellant.—The slanderous words spoken and wrongful acts done by Thompson and Sullivan, or either of them, in pursuance of the common design to injure appellant, amount to a joint tort or a joint trespass on their part for which each is liable; and suit for the entire trespass may be brought against either of them in any county in which such words were spoken or acts were done by either of them in pursuance of their wrongful design or conspiracy. Rev. Stats., art. 1194, subd. 9; Hill v. Kimball, 76 Texas, 210; Cook v. Horstman, 2 W. & W., 770; Raleigh v. Cook, 60 Texas, 438; Rotan v. Maedgen, 24 Texas Civ. App., 561; "Conspiracy," 8 Cyc. L. & P., 650; Penal Code, art. 950; Robberson v. State, 3 Texas Crim. App., 502.

If Thompson and Sullivan were not joint wrongdoers, Thompson was the agent of Sullivan and was acting within the real or apparent scope of his employment in circulating, in Duval, Nueces and Bee Counties, the slander uttered by Sullivan in Bexar County, and especially in repeating the slander to San Miguel in Duval County and employing him to spy on appellant's pastures; and Sullivan is therefore liable and can be sued for the entire trespass in Duval County, because, in the manner indicated, it was, partially at least, committed by him through his agent in Duval County. Galveston, H. & S. A. Ry. Co. v. Neel, 26 S. W. Rep., 788; Texas & Pac. Ry. Co. v. Woodall, 2 W. & W., p. 413; Newell on Slander and Libel, p. 357.

*Newton & Ward* and *J. C. Sullivan,* for appellee.—The undisputed evidence showed that there was no conspiracy entered into between Thompson and Sullivan to injure or defame plaintiff, as alleged by him; that the only communication or words spoken by appellee Sullivan to Thompson were those spoken in the county of Bexar, the residence of said Sullivan; that said communication between Sullivan and Thompson was privileged, and no malice having been shown towards plaintiff by either Thompson or Sullivan, and no conspiracy entered into between them, the court did not err in instructing the jury to return a verdict in favor of appellee Sullivan on his plea of privilege.  Schulze v. Jalonick, 18 Texas Civ. App., 296; Cotulla v. Kerr, 74 Texas, 94; Campbell v. Bostick, 22 S. W. Rep., 828; Cranfill v. Hayden, 97 Texas, 562; Missouri Pac. Ry. Co. v. Richmond, 73 Texas, 575; King v. Sassaman, 54 S. W. Rep., 304; Gulf, C. & S. F. Ry. Co. v. Floore, 42 S. W. Rep., 607; 18 Am. & Eng. Ency. Law, p. 1050; Nichols v. Eaton, 47 L. R. A., 483; Rothholz v. Dunkle, 13 L. R. A., 655.

At common law a conspiracy can not be made the subject of a civil action, although damages result, unless something is done which without the conspiracy would give a right of action.  The true test as to whether such action will lie is whether the act accomplished after the conspiracy is formed is itself actionable.  ·Sullivan had a right, in the absence of malice, and no malice is shown by the evidence, to take such steps as were necessary for the protection of his interests in the property covered by the mortgage.  This right could be lawfully exercised by himself without subjecting him to an action for damages, and, hence, he had the right to engage the assistance of Thompson in the protection of his interests without subjecting himself to a cause of action by Parr.  Delz ·v. Winfree, Norman & Pearson, 80 Texas, 404; Olive & Sternenberg v. Van Patten, 7 Texas Civ. App., 637; 8 Cyc. L. & Pro., sec. 3, p. 622; 8 Cyc. L. & Pro., secs. A., B., 2, 3 and C., pp. 645, 646.

An action can not be maintained against two or more persons jointly for oral slander because the words of one are not the words of the other.  King v. Sassaman, 54 S. W. Rep., 304; 13 Ency. Pl. & Pr., sec. 2, p. 30; Newell on Slander, p. 382.

FLY, ASSOCIATE JUSTICE.—This is a suit instituted by appellant against Oscar Thompson and D. Sullivan, to recover damages resulting from the uttering and speaking of certain false, malicious, defamatory and slanderous words.  It was alleged in the petition that appellant was a resident of Duval County and engaged in the business of raising, buying and selling cattle and other livestock, that he had a good reputation for honesty and integrity up to about December 25, 1904, when Daniel Sullivan, intending to injure appellant's character and reputation and to ruin and destroy his business, in the presence and hearing of Oscar Thompson, in San Antonio, Texas, uttered and spoke the following false, malicious, defamatory and slanderous words:  "I have been reliably informed that Parr has been running or moving his cattle down to Wells' ranch"; that at the time the words were uttered Sullivan held a mortgage on the cattle of appellee and the cattle were running and grazing in appellant's pastures in Duval and Starr Counties, and that Wells ranch was situated in Hidalgo and Starr Counties.  That by said

language Sullivan intended to charge that appellant was guilty of fraudulently disposing of mortgaged property, a felony under the laws of Texas; that Thompson assented to the false and slanderous statements made by Sullivan and "that at said time the said defendant, Oscar Thompson, at the instance and request of his codefendant Sullivan, entered into an agreement with him, whereby he, the said Thompson, agreed and undertook, for the purpose of injuring, harming and distressing this plaintiff and blackening his business reputation and standing, and thereby causing him to sustain financial loss, to watch and keep watch over plaintiff's conduct and in and about plaintiff's said pastures and over plaintiff's said mortgaged cattle." It was further alleged that in pursuance of their scheme to injure and destroy appellant's character and to ruin him in his business the same false and slanderous words were uttered by the appellees in Duval County in the presence of several persons, and a watchman was placed by them over appellant's ranch.

Sullivan answered by a plea of privilege to be sued in Bexar County and alleged that he had been fraudulently joined with Thompson in order to perpetrate a fraud on the jurisdiction of Duval County. He also filed a plea of misjoinder of persons and actions, and answered by general demurrers and special exceptions and by general denial, and a plea that the conversation declared on was held in Bexar County and was of a privileged character.

The cause was tried by jury, and after the testimony offered by appellant had been heard the court instructed a verdict for Sullivan and appellant then took a nonsuit as to Thompson.

It was shown by the facts that in December, 1904, or January, 1905, Sullivan sent for Thompson to come to his bank in San Antonio, Bexar County, Texas, and, after he got there, Sullivan told him that he had heard that Parr had given a second mortgage on his cattle, and that he (Sullivan) had been reliably informed "that they were driving them off to Wells' ranch or were going to drive them off to Wells' ranch," and asked him to look after the cattle, to which Thompson agreed. A man was employed by Thompson, and paid by Sullivan, to watch the cattle belonging to appellant on which Sullivan had the mortgage. Thompson told several persons about what Sullivan told him about appellant. No one heard Sullivan tell Thompson about appellant driving off the cattle, and the testimony fails to disclose that Sullivan ever spoke to anyone but Thompson about the matter of the cattle being driven off, and he told Thompson to keep it secret and Thompson promised that he would, but told several parties about it. There was no evidence in the least tending to show that Sullivan or Thompson had any malice or ill-will towards appellant, the whole matter being that Sullivan employed a man to watch appellant and prevent the mortgaged cattle from being driven out of Duval County, and the conversation with Sullivan was repeated by Thompson on his own account and contrary to the direct request of Sullivan. Sullivan did not speak to anyone in Duval County about the cattle, and if he was ever in Duval County it is not disclosed by the record.

The sole assignment of error is as follows: "The court erred in giving the following peremptory instruction to the jury to find in favor of defendant Sullivan on his plea of privilege," followed by a copy of the

charge which instructed the jury to find for Sullivan on his plea of privilege to be sued in Bexar County. It is the contention of appellant that the court had jurisdiction of Sullivan under subdivision 9, article 1194, Revised Statutes, which contains the following exception to the general rule that a person can not be sued out of his county: "Where the foundation of the suit is some crime, or offense or trespass, for which a civil action in damages may lie, in which case the suit may be brought in the county where such crime, or offense, or trespass was committed, or in the county where the defendant has his domicile." It is clear from that provision of the statute that if Sullivan had made the communication to Thompson in Duval County that he made in Bexar County, and that communication could, in law, be deemed slanderous, that the fact that Sullivan had his domicile in Bexar County would not have protected him from a suit in Duval County, or it may be that if Sullivan had told Thompson slanderous things about appellant with the request that he should spread the report abroad in Duval County, or if he had communicated the slanderous matter to a person that he knew would talk about it in that county with the desire and intent that it should be done, then the courts of that county would have jurisdiction of the cause. But no such cause is presented by this record. Sullivan asked Thompson not to divulge what he had told him about a matter of business, concerning which no one else could have any interest. It does not appear that it was necessary for Thompson to communicate what Sullivan told him to anyone. He could have employed the Mexican to watch the cattle without giving any reason whatever for it, and it was certainly gratuitous on his part to tell Jones, Wells and others about the matter.

The general rule is well established that a joint action against two or more persons for slander can not be maintained, and this rule has been carried so far as to hold that even if husband and wife utter similar words simultaneously, there are at common law two separate publications, and an action must be brought against the husband alone for what he said, and against both husband and wife for her words. Newell Sland. & Lib. sec. 41, p. 382, and authorities cited. Such being the rule the utterance by Thompson, in Duval County, of the matter communicated to him by Sullivan in Bexar County, would not be an utterance by Sullivan in Duval County. It follows that there was no utterance of the alleged slanderous words by Sullivan in Duval County, and he did not, therefore, commit any "crime, offense or trespass" in Duval County. If he can be held to have been guilty of slander, it was by reason of his conversation with Thompson in Bexar County and not by reason of the circulation of the conversation by Thompson in Duval County. Thompson did that on his own motion and he alone can be called to account for it. Sullivan's utterance of the words in Bexar County and Thompson's repetition of them in Duval County constituted two separate acts, the one in no wise dependent on the other.

It is held in Raleigh v. Cook, 60 Texas, 438, that where there was a conspiracy upon the part of several persons who lived in Galveston County to prosecute a certain man, and the affidavit upon which he was arrested and prosecuted was made by one of the conspirators in Wood County, the venue for damages against all of them was properly laid in Wood County, because of the conspiracy. The affidavit was but a

step in furtherance of the common design to prosecute, and the act of the man making the affidavit for the arrest was the act of all of them. In this case there was no proof whatever of conspiracy to slander appellant, and if the words uttered by Sullivan were slanderous, there was no conspiracy to utter them in Duval County, but on the other hand the only man to whom they were uttered was cautioned to keep them secret. It was not through the procurement of Sullivan that they were ever uttered in Duval County.

The first proposition of appellant under his first assignment of error is that "the slanderous words spoken and wrongful acts done by Thompson and Sullivan, or either of them, in pursuance of the common design to injure appellant, amount to a joint tort or joint trespass on their part for which each is liable." The proposition is not supported by the facts, if it was one sound in law, for there was not a particle of testimony that tended to show that any words were spoken or acts done by Sullivan in pursuance of any sort of a design to injure appellant. The evidence rather tended to show that he feared that the cattle had been, or might be moved by appellant, and he gave secret instructions to his agent to watch and prevent the removal of the cattle. It can not be said that he did not have the right to watch the property if he thought it might be unlawfully moved, and neither can it be maintained that he did not have the right to tell his agent of what he had heard and direct him to guard against it. This was what he did, with the caution to the agent not to reveal what had been told him. Sullivan had the right to watch the cattle if he thought the exigencies of the case demanded it, and that was all that he authorized his agent to do.

The evidence shows that the suit was not brought against Thompson in good faith, but that he was used merely as a stalking horse behind which Sullivan might be sued out of the county of his residence. Appellant admitted that he promised immunity to Thompson before the suit was instituted, and swore that if he obtained a judgment against Thompson that he would not collect it from him, but would give it to him. As soon as a verdict for Sullivan was instructed by the court, the suit was dismissed by appellant as to Thompson. The right guaranteed to every citizen to be sued in the county of his domicile, is one of too much value to be wrested from him, except by suits instituted in good faith under one of the exceptions to the general rule. (Henderson v. Kissam, 8 Texas, 46; Pool v. Pickett, 8 Texas, 122; Seley v. Whitfield (Texas Civ. App.), 46 S. W. Rep., 865.)

There is no error in the judgment and it is affirmed.

*Affirmed.*

Application for writ of error dismissed for want of jurisdiction.