## Pruitt v. Goldstein Millinery Company.

(Decided April 25, 1916.)

### Appeal from Jefferson Circuit Court (Common Pleas No. 4).

1. Principal and Agent—Libel and Slander.—A principal is not liable for oral slander uttered by his agent although within the apparent scope of the agent's authority, unless it was done by the authority, procurement, consent or knowledge of the principal.
2. Principal and Agent—Libel and Slander.—The principal does not ratify the speaking of such slander by retaining the agent in his employ after knowledge by him of the speaking of the words by the agent.

O'DOHERTY & YONTS for appellant.

ALFRED SELLIGMAN and SELLIGMAN & SELLIGMAN for appellee.

OPINION OF THE COURT BY JUDGE THOMAS.—Affirming.

The appellee (defendant below) is a partnership composed of Barney Goldstein and Leo Goldstein as members, and the partnership is engaged in the millinery business in the city of Louisville under the firm name of Goldstein Millinery Co. The appellant (plaintiff below) was employed by and working in the store of the defendant as sales lady. The two members of the partnership are non-residents of that city, residing in Chicago, Ill., and the general management and conduct of the store was in charge of a brother of the two partners, one Edward A. Goldstein.

Some time previous to the 11th day of February, 1915, which is the day this suit was filed, the manager of the firm, Edward A. Goldstein, is alleged to have falsely and maliciously spoken of and concerning the plaintiff in the presence and hearing of divers persons, these words: "You have stolen some goods from this company (meaning the Goldstein Millinery Co.) and if you don't bring these goods back with $25.00 by five o'clock this afternoon, I will have a policeman arrest you and you will spend a very pleasant Thanksgiving in jail." To recover damages for this slander the plaintiff filed suit against the two members of the partnership and its general manager, charging that all three of them were members of the firm, but the petition was afterwards amended in

which the facts concerning the membership of the firm, as well as the relation which Edward A. Goldstein sustained to it, were fully stated and in which amendment the suit was dismissed as to the general manager. The usual allegations in a petition of this character are found in this one, but in addition it is charged in the pleadings as amended that the general manager had full charge and control of the business with power to employ and discharge necessary servants and clerks and that he spoke the words while acting within the scope of his employment, and by reason thereof the two members of the partnership are liable for this slander charged to have been uttered by the partnership's general manager. It is furthermore alleged that if this contention should be untrue in law that the partnership and its members became liable for the slander because of a ratification of it. This ratification as alleged consisted of the partnership continuing to retain its general manager in its employment after it was known that he had spoken the words constituting the slander. A motion to strike a great portion of the plaintiff's pleading was sustained, as was also a demurrer filed to it, and plaintiff declining to plead further the petition was dismissed, from which judgment this appeal is prosecuted.

The rulings of the trial court upon the motion to strike and in sustaining the demurrer were made because it held that under the facts disclosed an individual principal could not be chargeable with oral slander uttered by his agent without an express authorization, direction or consent for him to do so.

The questions, sharply presented for our determination are: (1) May an individual be charged with slander uttered by his agent or servant even in the line of his employment, if such agent or servant had no authority to do so from his principal and did not utter it with the knowledge, direction or consent of his principal? and (2) the further one, that although the slander might not be so uttered by the agent, will a retention of the services of the agent by the principal after knowledge of the slander amount to a ratification?

(1) Considering these questions in the order named, we find the first case from this court touching the principle involved to be that of Hardin v. Cumstock, 2. A. K. Mar. 480. In that case the client was attempted to be held liable for a libelous statement in a pleading which

had been prepared by the defendant's attorney, it having been incorporated into the pleading without his knowledge, consent or direction. This court denied the liability of the defendant, and in doing so said: "In such an action malice is the gist of the action; and without evidence of malice Cumstock cannot be accountable. And assuming the evidence true, there is no pretext for the imputation of malice to Cumstock in charging the robbery. He appears to have engaged the attorney to prosecute an action for assault and battery, and the robbery is proven to have been charged by the attorney without his knowledge or directions."

That case was not identical in all of its features with the instant one, but the principle determined is analogous to that involved here, in that liability of the principal for the unauthorized utterances of libelous or slanderous words by his agent without the principal's authority or direction, is denied, although in that case the words uttered constituted a libel, they being in writing and contained in the pleading prepared by the agent (the attorney of defendant). This is mentioned because in some jurisdictions and by some authorities a difference is made, as to the principal's liability, between libel and slander in such cases. It would seem, however, that such distinction was not recognized by this court in that case.

A somewhat analogous question to this, showing who is liable for the uttering of slanderous words, was before this court in the case of Webb v. Cecil, &c., 9 B. Mon. 198. In that case the plaintiff's title to land had been slandered, as he charged, by several defendants whom he sued jointly. The question arose as to whether the defendants could be proceeded against jointly in one suit. It was determined however that no one was liable for uttering of slanderous words except the one who spoke them, and in denying the right of joinder, which involved the question as to who is liable for slander, this court said: "The tort complained of is verbal slander, and nothing more, for which it seems a joint action against two cannot be maintained. For a libel signed and published to a joint action, it has been held may be supported, and upon the ground that it is an *entire offense,* and one joint act done by them both. But such an action cannot be maintained against two for slanderous words, because the words of one are not the words of the other. The act of each constitutes an entire and distinct offence. And a

farther reason may be suggested that the same words spoken by one may occasion much greater injury than spoken by another; and that each should only be responsible for the injury inflicted by his own independent act.''

The question was again before this court in the comparatively recent case of Duquesne Distributing Co. v. Greenbaum, 135 Ky. 182, where it received a very exhaustive consideration. After quoting with approval the excerpt from the Webb case, *supra,* and referring to many others from foreign jurisdictions, the opinion continues:

''Without including in what we say the rules applicable when the action is for libel and confining our opinion to actions for slander, as that is the question we are dealing with, we think that a partnership or corporation cannot be held liable for the slanderous utterances of its agents or servants unless the actionable words were spoken by its express consent, direction, or authority or are ratified or approved by it. Generally speaking, when it is attempted to hold the master or principal liable for the wrongful acts of his servant or agent, it is sufficient to describe in a general way the wrongful act, and charge that it was done by the servant while acting within the scope of his employment. This is particularly true in cases involving injury to persons or property, where some physical act is done or omitted to be done by the servant that involved a wrongful act or a breach of duty upon the part of the master to the person injured. But a different rule should be applied when it is attempted to hold the master or principal in slander for defamatory words spoken by his agent or servant. Slanderous words are easily spoken, are usually uttered under the influence of passion or excitement, and more frequently than otherwise are the voluntary thought and act of the speaker. Or, to put it in another way, the words spoken are not generally prompted by or put into the mouth of the speaker by any other person, and represent nothing more than his personal views or opinions about the person or thing spoken of. If principals or masters could be held liable for every defamatory utterance of their servants or agents while in their service, it would subject them to liability that they could not protect or guard against. No person can reasonably prevent another, not immediately in his presence, from giving expression to his voluntary opinions, however defamatory they may be.

It would be entirely out of the question to hold the principal or master responsible for every reckless, thoughtless, or even deliberate speech made by his agent or servant concerning or relating to persons that the agent or servant may meet, or know, or come in contact with while in the service of his principal or master. As to other torts or wrongful acts committed by the servant or agent, and for which the master or principal may be liable, they can as a general rule guard against by exercising care in the employment of agents and servants and in the selection and use of the appliances or things they work with. But no sort of reasonable care that the master or principal could exercise in employment or control would enable him to prevent his servant or agent from the use in his absence of language that might be actionable. A speech by the agent or servant when absent from the principal or master is absolutely within his power alone to regulate or control. He may be prudent and discreet, or reckless or careless in his conversation. He may have his tongue under perfect control, or under no control whatever, may talk freely about persons and things, or talk little. And so we think that, when it is sought to charge the master or principal in any state of case with liability for defamatory utterances of the servant or agent, it is not sufficient to aver or prove that the servant or agent at the time was engaged in the service of the master or principal, or acting within the scope of his employment in the ordinary use of that word. But it must be further averred and shown that the principal or master directed or authorized the agent or servant to speak the actionable words, or afterwards approved or ratified their speaking.''

The question of the liability of a principal for the slanderous utterances of his agent was again before this court in the still more recent case of Stewart Dry Goods Co. v. Heuchtker, 148 Ky. 228. The principal in that case was a corporation and the agent who uttered the slander was one John H. Hill, it being alleged that he was employed in the capacity of general manager of the business of the corporation and part of his duty was to detect thefts committed by employes and to take such means as were necessary to apprehend the offender. He accused the plaintiff of theft of some of the company's goods and it was charged that this was done by him in the interest and on behalf of the company. Under these facts this

court held the principal not liable for the slander, and, in the course of the opinion, said: ''A verbal slander is the individual act of him who utters it, often arising out of his momentary excitement. It is the voluntary and tortious act of the speaker. There can be no joint utterance; and so two persons are not liable. He alone is liable who spoke the words. Many things are actionable when printed or published which are not actionable if published orally, and it seems to us a sound principle that the verbal utterance of an agent of limited powers should be regarded as his personal act rather than the act of his principal, unless authorized by the principal in fact or ratified by him.''

Authorities to the same effect might be multiplied, although in some jurisdictions the rule is different. We, however, are, not only committed to the previous utterances of this court in the cases, *supra,* but we think they hold the better rule upon the subject. It will be remembered that the case in hand is one of oral slander by an agent with an individual principal. Whatever may be the rule in such cases elsewhere, we are not inclined to extend it so as to charge the defendant with liability in cases of the character of the one before us. Moreover, to hold otherwise would open a wide door for fraudulent collusion betwen a disloyal agent and a prospective mercenary plaintiff. Through such collusion the agent without the authority, procurement, knowledge or consent of his principal, could utter indiscriminate slanders concerning the future plaintiffs with the understood purpose of sharing the spoils recovered from the principal as balm for the wounds made by his unauthorized slanders, and thus the principal would be made to suffer financial ruin and disaster. This could be accomplished even though the principal had expressly directed the agent not to engage in any slanderous utterances toward anyone; for if the rule insisted upon by appellant should be upheld, the only thing essential to the liability of the principal in such cases is, that the agent should utter the words in the apparent scope of his employment. If it should be insisted that this could be done as to other torts committed by agents and for which the principal is liable the answer is, that in such cases the injury is to the person or property of plaintiff, which he is not so willing to suffer for the mere purpose of sharing with the agent the compensation he might recover therefor. Such a holding as con-

tended for would be entirely out of harmony with the just purposes of the law and we are not prepared to give our indorsement to it.

(2) It is contended that the defendants ratified the slander uttered by their agent because, with a knowledge of it they declined to discharge him from their services. It is difficult to see upon what reasonable basis this contention is made. We are aware of the fact that in some instances unguarded expressions are made in law books, which, taken singly and alone, might form the basis for an earnest and interested litigant to conclude that a rule of law was thereby announced, and even sometimes an erroneous rule is announced, but we acknowledge ourselves unable to find any convincing authority justifying the extension of the doctrine of ratification to the limits contended for. The guilty servant in cases like this may be high class in some respects, and possibly of great business ability and supreme adaptation for the purposes for which he is employed, and to discharge him would entail great loss and inconvenience to his principal, yet, notwithstanding these considerations, if the plaintiff's theory is correct, the principal would be bound to do so or else be liable for the unauthorized slanders of his agent. This, according to our view, would violate all rules underlying the doctrine of ratification as taught by all the authorities. Moreover, in Newall on Slander, Sec. 35, page 377, it is said: "In order that there may be a valid ratification there must be both knowledge of the fact to be ratified and an intention to ratify it. The master must do something more than merely stand by and let the servant act. Non-intervention is not ratification."

In the case of Donican v. Manhattan Ry. Co., in the Superior Court of N. Y., Vol. 21, N. Y. Supreme Court, page 457, this question of ratification was before the court, and it was determined that the mere retention of the servant by the master after the commission of the tort constituted no ratification by the master. The court quoted with approval from the case of Billings v. Morrow, 68 Am. Dec. 235, as follows:

"A company cannot be held to ratify an assault and battery committed by its servant by retaining him in its service, where it believed his account of the affair and thought it just to maintain the *status quo* at least until a judicial determination of the matter."

This statement is supported by the following cases: Williams v. Car. Co., 3 Sou. Rep. 631; Vincent v. Rather, 31 Tex. 77; Gulick v. Grover, 97 Am. Dec. 728.

That the act of retention of the servant after the commission of the tort does not constitute a ratification by the master is also upheld by the Texas courts in the cases of International & G. N. R. Co. v. McDonald, 75 Tex. 41; and Gulf C. & F. R. Co. v. Kirkbridge, 79 Tex. 467. In the McDonald case, that court upon the question under consideration, said:

"The mere fact that the defendant retained the servant in its employ after the act was performed does not constitute a ratification."

Other cases in point are Gratton v. Suedmeyer, 129 S. W. (Mo.) 1038; and Kwiechen v. Holmes & Hallowell Co., 19 L. R. A. (N. S.) 255.

We concur with these authorities in holding that a retention by the master of a servant in his employ will not ratify a previously spoken slander by the servant so as to hold the master liable therefor. We have carefully considered the authorities to which appellant refers us, but without giving them a specific consideration herein, we deem it sufficient to say that in our opinion they do not conflict with the views herein expressed.

Having arrived at these conclusions, it results that the judgment must be, and it is affirmed.