## NEWTON et al. v. RHOADS BROS. et al.
### (No. 707.)

Court of Civil Appeals of Texas. Waco.
Nov. 15, 1928.

Rehearing Denied Dec. 13, 1928.

Gibson, Lovett & Lovett, of Corsicana, and Fred S. Rogers, of Bonham, for appellants.

Taylor & Howell, of Corsicana, and Frazier & Averitte, of Hillsboro, for appellees.

BARCUS, J. Appellants instituted this suit against appellees for damages which they claimed Mrs. Newton had suffered by reason of false detention and a slanderous statement made to her by an employé of appellees. She alleged that she went with a friend, Miss Jack, who wanted to examine some platinum mountings, into the jewelry store of appellees; that after they had looked at the mountings for a few minutes, she (Mrs. Newton) left Miss Jack in the jewelry store and went to a shoe store to have her shoes shined, and while there she was, at the instigation of said employé of appellees, arrested by a policeman and brought back into the jewelry store and there accused of having stolen a mounting. She alleged that the employé, in charging her with having stolen the platinum mounting, which was valued at $650, stated to the officers and other persons in the store that—

"The mounting was in the tray when I put it out; when you left it was gone."

Appellees answered by a number of special exceptions and a general denial, and specially pleaded that their employés had no authority or power to make any slanderous statement with reference to or toward Mrs. Newton, and had no authority to cause her to be arrested. The cause was tried to a jury, and at the conclusion of the testimony the trial court instructed a verdict against appellants.

Mrs. Newton testified that she lived in Bonham, Tex., and that she and a Miss Jack from Amarillo were visiting a mutual friend in Corsicana; that she (Mrs. Newton) had been in appellees' jewelry store, and as she started out, met Miss Jack, who told her she wanted to look at some mountings for a valuable diamond ring; that she then returned to the store with Miss Jack; that the young lady clerk took a tray containing diamond and platinum mountings and put them on the showcase; that she and Miss Jack examined said stones and mountings and discussed them; that she then told Miss Jack that she was going to get her shoes shined and that she would meet her either at the shoe store or at the car; that she went into the shine parlor next door to the jewelry store, and while she was there a police officer came in and asked her, "Were you in Rhoads Bros. Jewelry Store just now?" and told her a platinum mounting was gone, "and asked if I would go back with him." She testified that she did go back into

the store with the officer. Her version of what occurred after she went back to the store is as follows:

"I walked on into the jewelry store first. Miss Jack was still there in Rhoads Bros., and when I came back in I wanted to know about this mounting and the girl (the clerk) said it was not there. I wanted to know what they meant by this and she said that when she opened the tray it had been there and when I had left there it was gone, and that she knew that I had examined the diamonds. I told her that I did not have the mounting but that I had seen them. When I walked back in there Mr. Reed was standing there with Miss Jenkins. I said that I did not have the mounting but that I was willing to be searched, and he (Mr. Reed) insisted that I be searched and asked Miss Jenkins to search me in the back of the store, but Mr. Nutt (the police officer) kept them from doing that. Mr. Nutt said that if I was not guilty of it (taking the diamond) I would not mind being searched, and Mr. Nutt also said it was not necessary and for them to wait a few minutes. The only persons present at the time were Mr. Griffin and Mr. Nutt, the two officers, Miss Jack, Mr. Reed, Miss Jenkins and me. There were no other customers. No one left while I was there except Miss Jenkins, who went to Mr. Rhoads' home to find him. When Miss Jenkins returned she said: 'I am very sorry, I have made a mistake'; that Mr. Rhoads had taken the stone out without their knowledge of it."

Miss Jenkins testified that she had only been employed by Rhoads Bros. 10 days; that it was her first experience working in a jewelry store, and that they had told her positively not to try to sell the diamonds and valuable mountings; that when Miss Jack and Mrs. Newton came into the store to look at said mountings, she took the tray out and placed it on the showcase and went to get Mr. Reed, another employé in the store, to assist her in waiting on the customer; that when she came back she noticed that a very valuable mounting was missing and that Mrs. Newton was gone. She testified that she and Mr. Reed looked on the floor and under the counter, trying to find said mounting, and failed to do so, and that she, without saying anything to Mr. Reed or any one else, tried to get Mr. Rhoads over the telephone but could not locate him; that she then telephoned the police officers, and in response thereto Mr. Griffin and Mr. Nutt, two plain clothes men, came to the store. Mr. Griffin testified:

"Miss Jenkins told me she had missed a $450.00 mounting. She said there were two ladies looking at them; that one was still in the store and one was in the Big Four Shoe Store. She said that the mounting was in the case when she took the tray out and after Mrs. Newton had gone they had missed the mounting, and I asked her to show Mrs. Newton to me. She went to the shine shop and pointed her out but Miss Jenkins did not go back in the shine shop with me. I spoke to Mrs. Newton and asked her if she had been in Rhoads Bros. Jewelry Store a few minutes before, and she said that she had and that she had been looking at the mountings, and I told her they had missed one since she left and asked her if she would return with me, and she said that she would be glad to go back with me."

He testified that he did not arrest Mrs. Newton and would not have done so under the circumstances; that she went with him to the jewelry store and offered to let him search her purse, but he refused to do so. While the officers were there, Miss Jenkins left the store and went some two or three blocks away and found Mr. G. D. Rhoads, one of the proprietors of the store, who told her he had taken the mounting out himself. She then returned and apologized to Mrs. Newton. This occurred about 2 o'clock in the afternoon. Mr. Rhoads testified that he did not know Mrs. Newton; that later on that afternoon the friend at whose house Mrs. Newton was visiting, telephoned him, and in response thereto he went out to said home and apologized to Mrs. Newton and told her he regretted exceedingly what had happened. It appears from the record that both Miss Jenkins, the employé of appellees, and Mrs. Newton thought they saw the missing mounting in the tray; Miss Jenkins saying that it was there when it was put on the counter, and Mrs. Newton in reply thereto saying that she had seen them. As a matter of fact, both of them were mistaken, since Mr. Rhoads had prior thereto removed it himself. Miss Jack, who was present during the entire proceeding, was not called to testify.

■ Appellants contend, first, that under the evidence the trial court should have submitted to the jury the question of whether Mrs. Newton had been illegally detained or restrained of her liberty by Miss Jenkins, the employé of appellees. We overrule this contention. Under the evidence of Mrs. Newton herself, it does not appear that she was in any way detained or restrained of her liberty by Miss Jenkins, or that Miss Jenkins was in any way responsible for Mrs. Newton having come back into the store in company with the officer. Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059; Meyer v. Monnig Dry Goods Co. (Tex. Civ. App.) 189 S. W. 80 (error refused); El Paso Electric R. Co. v. Crews (Tex. Civ. App.) 277 S. W. 732 (error refused).; Bolding v. Camp (Tex. Com. App.) 6 S.W.(2d) 94; McBeath v. Campbell (Tex. Civ. App.) 4 S.W.(2d) 999. In Joske v. Irvine, supra, Mr. Irvine sought damages from Mr. Joske because of an alleged detention. The facts in that case were much stronger and much more indicative of Joske having caused Irvine's arrest, than the facts in this case, even if they had been done by appellees themselves rather than by the employé, Miss Jenkins. The Supreme Court, in reversing the judgment of the trial court, held that there was not sufficient evidence to authorize the submission of said issues to the jury, and stated that it was not only the privi-

lege but the duty of Mr. Joske to communicate to the officer all facts within his knowledge tending to show that Mr. Irvine had stolen the goods, in order that the officer himself might determine whether or not the evidence was sufficient to justify him in arresting Mr. Irvine. In this case Miss Jenkins told the officer what had occurred and all the circumstances, and the officer, in the performance of his duty, then talked to Mrs. Newton, who of her own accord came back to the store. Both Miss Jenkins and the officer were, under the holding in the Joske v. Irvine Case, doing their duty.

■■ Appellants by their second and last proposition contend that they were entitled to have the jury pass on the issue as to whether Mrs. Newton had been slandered by the remarks of Miss Jenkins, and whether appellees were responsible therefor. We overrule this contention. In their pleadings appellants allege that Miss Jenkins, the employé of appellees, had charged Mrs. Newton with theft of the platinum mounting of the value of about $650, and in making said charge stated, "The mounting was in the tray when I put it out, and when you left it was gone"; that said words were so spoken and under such circumstances as to impute the commission of crime to her. The record shows without dispute that Miss Jenkins, a young lady with no experience, had only been employed in the jewelry store 10 days as a saleslady and with no other duties, and had been specifically told by her employers not to show or try to sell the diamonds or platinum mountings. In order to hold an employer liable for the acts of his employés, said acts must be done within the scope or apparent scope of the employment of the employés. 37 C. J. p. 13, states the general rule on this question as follows:

"In application of the general rules governing the liability of a principal or master for torts committed by his agent or servant, it is generally held that a principal, master or employer may be held liable in damages for the publication of a defamation by his agent or servant, where the latter in publishing the defamatory matter was carrying out express orders, or acting in pursuance of express authority, or in the usual course of his employment, or where the libelous publication has been ratified and adopted by the principal or master. But otherwise there is no liability on the part of the principal or master."

In Pruitt v. Goldstein Millinery Co., 169 Ky. 655, 184 S. W. 1134, it was held that an employer is not liable for slanderous words used by an employé to a customer, unless the employer ratified same or authorized same to be made, or unless it was done while carrying out a specific task assigned by the master; and in said case held that the employer was not responsible for any damage occasioned by its employé using these words:

"You have stolen some goods from this company (meaning the Goldstein Millinery Company) and if you don't bring these goods back with $25 by five o'clock this afternoon, I will have a policeman arrest you, and you will spend a very pleasant Thanksgiving in jail."

The same court, in Stewart Dry Goods Co. v. Heuchtker, 148 Ky. 228, 146 S. W. 423, where the company was sought to be held for a slanderous statement made by an employee, stated:

"A verbal slander is the individual act of him who utters it, often arising out of his momentary excitement. It is the voluntary and tortious act of the speaker. There can be no joint utterance, and so two persons are not liable. He alone is liable who spoke the words. Many things are actionable, when printed and published, which are not actionable if published orally, and it seems to us a sound principle that the verbal utterances of an agent of limited powers should be regarded as his personal act, rather than the act of his principal, unless authorized by the principal in fact or ratified by him"—and in support thereof cited many authorities.

To the same effect is the holding in Young v. North East Coal Co., 194 Ky. 520, 240 S. W. 56.

In Duquesne Distributing Co. v. Greenbaum, 135 Ky. 182, 121 S. W. 1026, 24 L. R. A. (N. S.) 955, 21 Ann. Cas. 481, a well-considered case, the distinction is drawn between the liability of a partnership or an individual and that of a corporation for slanderous words spoken by an employee; and it was there held that the owner, master, or employer, when not a corporation, was not responsible for slanderous words spoken by his employé or by his partner, unless it was done with his knowledge or consent, or same was ratified by him, or unless it was clearly within the line of his employment. Said opinion states:

"All the authorities are agreed that slander, which is an oral utterance of defamatory matter, must necessarily be committed by an individual. Two or more persons cannot in the very nature of things, jointly utter the same words."

In the case of Parr v. Thompson, 45 Tex. Civ. App. 337, 100 S. W. 792, Mr. Justice Fly of the Fourth Court of Civil Appeals, stated that the general rule is that a joint action for slander against two or more individuals cannot be maintained, since an oral slander is the act of the individual and no other person is responsible, unless it is shown that the parties were acting jointly and in concert, or the person making the slanderous statement was doing so at the direct request of another party. 18 Am. & Eng. Enc. Law (2d Ed.) p. 1061, lays down the rule:

"A principal or master may be held liable in damages for a libel by his agent when carrying out express orders or in the usual course of

employment, or when he has adopted the same, but otherwise there is no liability on the part of the principal."

See, also, same authority, page 1059.

In this case the two Rhoads brothers, who are appellees, were running a jewelry store as a partnership. Miss Jenkins was employed by them to sell shelf articles and do some clerical work, with positive instructions not to attempt to sell any valuable jewelry. She had no authority over the business or any of its affairs. She was not authorized to say anything derogatory of any person's character or charge a person with any kind of a crime. At the time the words about which complaint is made in this case were spoken, the officers of the law were present and one other employé in the store and appellant and her close friend, Miss Jack. It was thought that a valuable piece of jewelry was missing. Miss Jenkins thought it had been removed from the tray. She reported the circumstances to the officers and then went in search of the manager of the store. As soon as she found the manager and ascertained that the piece of jewery had been sold by him, she immediately apologized to Mrs. Newton. When Mr. Rhoads, one of appellees and one of the joint owners of the store, learned Mrs. Newton's name and where she was staying, he went immediately to her and made all possible amends and apologies. There was no contention that appellees in any way authorized Miss Jenkins to make the accusation she did, or that they in any way ratified or condoned same. The weight of authority seems to be that where an employé working for an individual makes a slanderous remark to one of the customers, the employer is not responsible therefor, unless same was said in the course of his employment or was ratified by the employer, or was spoken at the instance and instigation of the employer. If it could be said that the words spoken about which complaint is made by appellants were slanderous, we do not think that appellees, under the facts in this case, are responsible therefor.

We have examined all of appellants' assignments of error, and same are overruled.

The judgment of the trial court is affirmed.