TRAMMELL *v.* RAMEY.

5-1972                                                      329 S. W. 2d 153

Opinion delivered November 23, 1959.

*James M. Roy* and *Elsijane Trimble Roy,* for appellant.

*Taylor & Sudbury,* for appellee.

GEORGE ROSE SMITH, J. This is an action by the appellants, E. H. Trammell and his wife and child, to recover for personal injuries suffered in a collision between the Trammell car and a car that was owned and being driven by the appellee's employee, Banks, whose drunkenness caused the accident. The collision happened on a Sunday night, at a time when Banks was upon a mission of his own having no connection with his employer's business. The appellants seek to hold the employer liable on a theory so novel that it does not seem to have been asserted in any reported American case. The trial court sustained the appellee's demurrer to the complaint, on the ground that no cause of action was stated, and this appeal is from the ensuing order of dismissal.

The complaint is long, but its essential allegations are simple. At the time of the collision in August of 1958 Ramey, it is said, operated a general store situated on U. S. Highway 61 in a small community which seems to be a few miles south of Blytheville. Banks, a man of fifty-three, was Ramey's senior employee, having worked regularly at the store for the preceding ten years. The two men were living in adjacent houses behind the store and had been friends for twenty years.

Banks had had an alcoholic problem throughout the time Ramey had known him. In 1952 and again in 1958, a few months before the collision, Banks was arrested for driving while intoxicated. Ramey was frequently forced to send Banks home for drinking on the job. Ramey had discharged Banks several times on account of his alcoholism, but in each instance Banks had been re-employed. From the complaint: ''Recognizing Mr. Banks' weakness and addiction for alcohol and for driving motor vehicles while intoxicated, Mr. Ramey had assumed control thereof and responsibility therefor many months, if not years, before the accident. In connection therewith Mr. Ramey discussed the problem with Mr. Banks innumerable times and he also placed Banks in communication with the Blytheville Chapter of Alcoholics Anonymous and similar agencies.''

In August of 1958 Ramey decided to take his wife and children to Tennessee for a week's vacation. It is asserted that Ramey knew that his own presence was the strongest deterrent to Banks' drinking and that in Ramey's absence a substitute restraint was necessary. Despite this knowledge Ramey left without taking any precautions to forestall Banks' drinking and particularly without notifying the Blytheville representatives of Alcoholics Anonymous, who had expressed their willingness to help at any time.

Ramey departed for Tennessee on Sunday morning and put Banks in charge of the store, which was to be reopened on Monday. That Sunday night Banks took his own car and drove to Blytheville, where he bought and consumed two pints of whiskey. Completely drunk, Banks attempted to drive back home, but before reaching the city limits he ran into the Trammell car and caused the injuries sued for. It is asserted that Banks has neither property nor liability insurance, so that the plaintiffs are without an effective remedy if Ramey is not liable for their injuries.

The trial court was right in holding that the allegations of the complaint do not establish liability on the part of Ramey. The principal charge is that Ramey had the power to control Banks and failed to exercise that power with knowledge of the harmful consequences that might follow. The question is, was Ramey guilty of negligence? We think it plain that he was not.

Ordinarily one person is under no duty to control the actions of another person, even though the former has the practical ability to govern the latter. The exceptions to this basic principle all involve situations in which the defendant's duty of control arises from a relation that exists either between the defendant and the plaintiff or between the defendant and the person who injured the plaintiff. Discussions of the general subject, upon which there is comparatively little authority, may be found in Harper and Kime, "The Duty to Control the Conduct of Another," 43 Yale L. Jour. 886;

Harper and James, The Law of Torts, § 18.7; Rest., Torts, §§ 317 to 320.

The relation of master and servant is one that may give rise to a duty on the part of the master to control his employee outside the scope of his employment, but the duty exists only with respect to conduct by the servant which nevertheless has a substantial connection with the master's business. The Restatement of Torts, which states the prevailing view, imposes that duty upon the master only when the servant is upon the master's premises or is using a chattel belonging to the master. "Thus, a manufacturer is required to exercise his authority as master to prevent his servants, while in the factory yard during the lunch hour from indulging in games involving an unreasonable risk of harm to persons outside the factory premises. He is not required, however, to exercise any control over the actions of his employees while on the public streets or in a neighboring restaurant during the lunch interval even though the fact that they are his servants may give him the power to control their actions by threatening to dismiss them from his employment if they persist therein." Rest., Torts, § 317.

It is clear that the bare relation of master and servant did not impose upon Ramey any responsibility for Banks' conduct in Blytheville on the night of the accident. The appellants argue, however, that Ramey rendered himself liable by taking an interest in Banks' alcoholic problem and endeavoring to help Banks overcome his weakness. Cases such as *Haralson* v. *Jones Truck Lines*, 223 Ark. 813, 270 S. W. 2d 892, 48 A. L. R. 2d 248, are relied upon for the general principle that one who assumes to act, even though under no duty to do so, may thereby become subject to an obligation to act carefully.

The doctrine in question falls decidedly short of visiting liability upon Ramey in this case. If a person gratuitously goes to the assistance of someone in distress he exposes himself to the consequences of his negligence, but there the matter ends; he is not bound to

play the good Samaritan again if he is confronted with the same situation upon a wholly different occasion. Ramey's friendly guidance may have reduced the number of Banks' sprees and in that way may have prevented highway accidents that would otherwise have occurred, but this does not entitle the public to demand that Ramey devote the rest of his life to the care of Banks. Even if Ramey had given up his vacation and had stayed at home to look after Banks, as the appellants think he should have done, he would still have been free to abandon his voluntary supervision and let Banks go into Blytheville for the avowed purpose of getting drunk. Thus the complaint is not one but two steps away from the assertion of a cause of action.

Counsel for the appellants discuss at some length the law pertaining to nuisances, but if Ramey was not negligent in leaving Banks in control of his own car (and Ramey had no legal right to interfere with that control), there is even less reason to hold that upon the same facts Ramey was absolutely liable for maintaining a nuisance. It is also argued that Banks was acting in the scope of his employment because he was returning to the store, but under our holding in *Healey* v. *Cockrill*, 133 Ark. 327, 202 S. W. 229, LRA 1918D, 115, and many later cases, it is clear that Banks was still engaged wholly in his own affairs.

**Affirmed.**