**OTIS ENGINEERING CORPORATION,
Petitioner,**

v.

**Larry CLARK et al., Respondent.**

**No. C–1227.**

Supreme Court of Texas.

Nov. 30, 1983.

Rehearing Denied May 16, 1984.

Locke, Purnell, Boren, Laney & Neely, John H. McElhaney and C. Michael Moore, Dallas, for petitioner.

Francis, Francis & Lavender, Judson Francis, Jr., P.C. and James N. Francis, Dallas, Kronzer, Abraham & Watkins, W. James Kronzer, Houston, for respondent.

KILGARLIN, Justice.

This is a wrongful death action instituted by Larry and Clifford Clark against Otis Engineering Corporation after the Clarks' wives were killed in an automobile accident involving an Otis employee, Robert Matheson. At the time of the accident Matheson was not in the course of his employment. The trial court granted Otis' motion for summary judgment. The court of appeals reversed and remanded the cause for trial, holding there were genuine issues of fact. 633 S.W.2d 538. We affirm the judgment of the court of appeals.

Two questions are presented. First, does the law impose any duty upon Otis under the evidence as developed? Secondly, does such evidence give rise to any genuine issues of material fact?

Matheson worked the evening shift at Otis' Carrollton plant. He had a history of drinking on the job, and was intoxicated on the night of the accident. At his dinner break that night and on other occasions that day he went to the parking lot, where he allegedly consumed alcoholic beverages in his automobile. Donald Roy was Matheson's supervisor and Rennie Pyle was a co-worker who assisted Matheson on occasion. Pyle testified[1] that he knew of Matheson's drinking problems and that he told Roy on the day of the accident that Matheson was not acting right, was not coordinated, was slurring his words, and that "we need to get him off the machines." David Sartain, a fellow worker, testified that Matheson was either sick or drinking, was getting worse, "his complexion was blue and like he was sick," and that he was weaving and bobbing on his stool and about to fall into his machine. The supervisor testified that he observed Matheson's condition and was aware that other employees believed he should be removed from the machine. When Matheson returned from his dinner break, Roy suggested that he should go home. Roy, as he escorted Matheson to the company's park-

ing lot, asked if he was all right and if he could make it home, and Matheson answered that he could. Thirty minutes later, some three miles away from the plant, the fatal accident occurred.

Dr. Charles S. Petty, the medical examiner, testified that Matheson had a blood alcohol content of 0.268% which indicated he had ingested a substantial quantity of alcohol, an amount representing some sixteen to eighteen cocktails if consumed over a period of one hour, or twenty to twenty-five cocktails if consumed over a period of two hours. The doctor stated that persons working around Matheson would undoubtedly have known of his condition, expressing his opinion that one hundred percent of persons with that much alcohol exhibit signs of intoxication observable to the average person.

Matheson's extreme state of intoxication was well known to his supervisor and fellow workers. The testimony indicated the supervisor knew Matheson was in no condition to drive home safely that night. When some night shift employees came to work around 10:30 p.m. and remarked there had been an accident on Belt Line Road, Roy immediately suspected Matheson was involved. Roy testified he feared Matheson might have an accident, knowing that Matheson had to drive on heavily traveled Belt Line Road to reach home. Upon hearing of the accident, Roy, acting on a hunch, voluntarily went to the police station to see if Matheson was involved.

The Clarks contend that under the facts in this case Otis sent home, in the middle of his shift, an employee whom it knew to be intoxicated. They aver this was an affirmative act which imposed a duty on Otis to act in a non-negligent manner. *Cf. Osuna v. Southern Pacific Railroad*, 641 S.W.2d 229 (Tex.1982). This action by Otis subjected Matheson and other motorists to the dangers of an accident on the highway.

The Clarks further contend that Otis maintained a nurses' station on the premis-

---

1. All testimony referred to is by way of depositions on file at the time of the hearing of the

Motion for Summary Judgment.

es for the benefit of ill or disabled employees. Although Otis provided this facility to aid employees in situations such as this, the supervisor chose instead to accompany Matheson to the parking lot and send him out on the highway, even though he had foreseen the possibility of an accident. The Clarks likewise maintain that Roy had other alternatives which the jury could find to be more reasonable, such as taking Matheson to the nurses' station, giving him a ride home, or calling a taxi, the police, or Matheson's wife. The Clarks state that fact questions exist as to whether Otis was negligent in sending Matheson home in an obviously intoxicated condition and whether such negligence was a proximate cause of the Clarks' deaths.

 Otis' motion for summary judgment was granted on the basis that as a matter of law Otis owed no duty to the Clarks. In order to establish tort liability, a plaintiff must initially prove the existence and breach of a duty owed to him by the defendant. *Abalos v. Oil Development Co. of Texas,* 544 S.W.2d 627, 631 (Tex. 1976). As a general rule, one person is under no duty to control the conduct of another, *Restatement (Second) of Torts* § 315 (1965), even if he has the practical ability to exercise such control. *Trammell v. Ramey,* 231 Ark. 260, 329 S.W.2d 153 (1959). Yet, certain relationships do impose, as a matter of law, certain duties upon parties. *See e.g., Restatement (Second)* §§ 316–20. For instance, the master-servant relationship may give rise to a duty on the part of the master to control the conduct of his servants outside the scope of employment. This duty, however, is a narrow one. Ordinarily, the employer is liable only for the off-duty torts of his employees which are committed on the employer's premises or with the employer's chattels. *Restatement (Second)* § 317.

Though the decisional law of this State has yet to address the precise issues presented by this case, factors which should be considered in determining whether the law should impose a duty are the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury and consequences of placing that burden on the employer. *See Robertson v. LeMaster,* 301 S.E.2d 563 (W.Va.1983); *Turner v. Grier,* 43 Colo.App. 395, 608 P.2d 356 (1979).

 While a person is generally under no legal duty to come to the aid of another in distress, he is under a duty to avoid any affirmative act which might worsen the situation. *See* W. Prosser, *The Law of Torts* § 56 at 343 (4th ed. 1971). One who voluntarily enters an affirmative course of action affecting the interests of another is regarded as assuming a duty to act and must do so with reasonable care. *Colonial Savings Ass'n v. Taylor,* 544 S.W.2d 116 (Tex.1976); *Fox v. Dallas Hotel Co.,* 111 Tex. 461, 240 S.W. 517 (1922); *see* W. Prosser, *supra,* § 56.

Otis contends that, at worst, its conduct amounted to nonfeasance and under established law it owed no duty to the Clarks' respective wives. Otis further says that by imposing liability for the acts of its intoxicated employee, this Court would be judicially creating "dram shop" liability. We disagree. This is not a "dram shop" case. If a duty is to be imposed on Otis it would not be based on the *mere knowledge* of Matheson's intoxication, but would be based on additional factors.

Traditional tort analysis has long drawn a distinction between action and inaction in defining the scope of duty. Dean Prosser attributes this distinction to the early common law courts' preoccupation with "more flagrant forms of misbehavior [rather than] with one who merely did nothing, even though another might suffer harm because of his omission to act." W. Prosser, *supra,* at 338. However, although courts have been slow to recognize liability for nonfeasance, "[d]uring the last century, liability for 'nonfeasance' has been extended still further to a limited group of relations, in which custom, public sentiment and views of social policy have led the courts to find a duty of affirmative action." *Id.* at 339. Be that as it may, we do not

view this as a case of employer nonfeasance.

What we must decide is if changing social standards and increasing complexities of human relationships in today's society justify imposing a duty upon an employer to act reasonably when he exercises control over his servants. Even though courts have been reluctant to hold an employer liable for the off-duty torts of an employee, "[a]s between an entirely innocent plaintiff and a defendant who admittedly has departed from the social standard of conduct, if only toward one individual, who should bear the loss?" W. Prosser, *supra*, at 257. Dean Prosser additionally observed that "[t]here is nothing sacred about 'duty,' which is nothing more than a word, and a very indefinite one, with which we state our conclusion." *Id.*

During this year, we have taken a step toward changing our concept of duty in premises cases. In *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292 (Tex.1983), we held that a store owner has a duty to guard against slips and falls if he has actual or constructive knowledge of a dangerous condition and it is foreseeable a fall would occur. We now leave to the jury exclusive determination of the matter if evidence exists that the store owner had the requisite knowledge of the dangerous premises condition. No longer do we require knowledge of the specific object. Following *Corbin*, why should we be reluctant to impose a duty on Otis? As Dean Prosser has observed, "[c]hanging social conditions lead constantly to the recognition of new duties. No better general statement can be made, than the courts will find a duty where, in general, reasonable men would recognize it and agree that it exists." W. Prosser, *supra*, at 327. If, as Prosser asserts should be done, we change concepts of duty as changing social conditions occur, then this case presents the Court with the opportunity to conform our conception of duty to what society demands.

Several recent cases in other jurisdictions have extended concepts of duty in the area of employer liability. In *Leppke v. Segura*, 632 P.2d 1057 (Colo.App.1981), a tavern owner refused to serve an intoxicated man; however, a tavern employee later jumpstarted the man's car. Subsequently, the intoxicated man caused a fatal automobile accident. The Colorado court, in reversing a summary judgment, held that the employee's affirmative action was enough to raise an issue of breach of duty even though there was no relationship between the defendant and the intoxicated driver. *Id.* at 1059.

An employer was held liable for injuries sustained by third parties in an accident caused by its intoxicated employee in *Brockett v. Kitchen Boyd Motor Co.*, 264 Cal.App.2d 69, 70 Cal.Rptr. 136 (1968). The employee, Huff, became intoxicated at a Christmas party given by the motor company. Although Huff was "grossly intoxicated," a representative of the company placed him in his automobile and directed him to drive home. The court recognized that the supplying of alcohol does not ordinarily make the supplier liable to an injured third party, but the affirmative acts of placing him in his car and directing him to drive home imposed a duty on the company to exercise reasonable care. 70 Cal.Rptr. at 139.

Recently, the Supreme Court of Appeals of West Virginia rendered its opinion in *Robertson v. LeMaster*, 301 S.E.2d 563 (W.Va.1983). In that case, LeMaster's employer, The Norfolk and Western Railway Company, had required LeMaster to work twenty-seven consecutive hours to remove debris and repair a track damaged by a train derailment. After many complaints by LeMaster that he was tired and wanted to go home, LeMaster's foreman permitted him to do so. LeMaster lived some fifty miles from his place of work, and while driving his own car home, fell asleep and was involved in a collision with Robertson, causing injuries to Robertson. The West Virginia court recognized that the railroad company owed no duty to control an employee acting outside of the scope of employment, but stated that such was not the issue in the case, saying "rather it is

whether the appellee's conduct prior to the accident created a foreseeable risk of harm." *Id.* at 567. The court concluded that requiring LeMaster to work such long hours and then setting him loose upon the highway in an obviously exhausted condition was sufficient to sustain a cause of action against the railroad. We are persuaded by the logic of the holdings in these three cases.

 Therefore, the standard of duty that we now adopt for this and all other cases currently in the judicial process, is: when, because of an employee's incapacity, an employer exercises control over the employee, the employer has a duty to take such action as a reasonably prudent employer under the same or similar circumstances would take to prevent the employee from causing an unreasonable risk of harm to others. Such a duty may be analogized to cases in which a defendant can exercise some measure of reasonable control over a dangerous person when there is a recognizable great danger of harm to third persons. *See, e.g., Restatement (Second) of Torts,* § 319 [2]; W. Prosser, *supra,* at 350. Additionally, we adopt the rule from cases in this Restatement area that the duty of the employer or one who can exercise charge over a dangerous person is not an absolute duty to insure safety, but requires only reasonable care. *See Missouri, K. & T. Ry. Co. of Texas v. Wood,* 95 Tex. 223, 66 S.W. 449 (1902); *Sylvester v. Northwestern Hospital of Minneapolis,* 236 Minn. 384, 53 N.W.2d 17 (1952).

 Therefore, the trier of fact in this case should be left free to decide whether Otis acted as a reasonable and prudent employer considering the following factors: the availability of the nurses' aid station, a possible phone call to Mrs. Matheson, having another employee drive Matheson home, dismissing Matheson early rather than terminating his employment, and the foreseeable consequences of Matheson's driving upon a public street in his stuporous condition. As summary judgment proof clearly raises all of these factors questioning the reasonableness of Otis' conduct, a fact issue is present and summary judgment was improper.

For these reasons, we affirm the judgment of the court of appeals and remand to the trial court for determination of the issues.

McGEE, J., dissents in opinion in which POPE, C.J., and BARROW and CAMPBELL, JJ., join.

McGEE, Justice, dissenting.

I dissent. The summary judgment evidence before us is not disputed. The sole question is whether an employer is under a duty to control the conduct of an intoxicated, off-duty employee. Otis Engineering Corporation's agent, Mr. Donald Roy, was responsible for the supervision of twenty-three employees, including Matheson. On a prior occasion, Roy was informed by other workers that Matheson drank on the job, allegedly in his car during breaks. Subsequently, Roy confronted Matheson, explained the company's policy against drinking, and warned him that he would be terminated if he drank on company premises. Roy testified that he never observed Matheson drinking nor did he ever smell alcohol on his breath, but that Matheson appeared incapable of continuing his job on the night in question. That same night Matheson complained to Roy that he was not feeling right, and Roy suggested that Matheson go home. Roy escorted Matheson to the door of the plant, but did not go outside or watch him walk to his car. Approximately a half hour later, Matheson was involved in the fatal accident, which also claimed his own life.

At the time of the accident, Matheson was not acting within the course and scope of his employment; Otis assumed no re-

---

**2.** Section 319 provides:
One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under

a duty to exercise reasonable care to control the third person to prevent him from doing such harm.

sponsibility for the means by which its employees traveled to and from work. Moreover, Matheson was neither on Otis' premises nor in an automobile owned by Otis at the time of the collision. The Clarks do not seek recovery in this suit under any theory of vicarious liability, but instead on the premise that Otis was, itself, primarily negligent because it breached a duty to control Matheson's conduct.

In my opinion, Otis was under no legal duty to restrain Matheson or to refrain from sending him home before the end of his shift, as the majority holds. The inability of a majority of the court to state *why* Otis owed a duty to the Clarks' decedents convinces me that the imposition of liability on third parties for the torts of an intoxicated person is not the proper remedy.

To compound the problem, the majority reaches an incorrect result. No court in any jurisdiction has ever suggested that an employer may be held liable for the off-duty, off-premises torts of an intoxicated employee when the employer has not contributed to the employee's state of intoxication. Moreover, and because of the pervasiveness of alcohol-related accidents of all types, today's decision radically increases the potential liability of all Texans without even acknowledging those policies that militate against the recognition of a duty in cases such as this. In my opinion, the bench, the bar, and the public are entitled to know the reasons for and the consequences of expanded liability, matters the majority opinion chooses not to address.

The majority holds that Otis owed the Clarks' decedents the duty to exercise reasonable care because Otis knew Matheson was intoxicated and because its "affirmative act" of sending him home early presented a foreseeable risk of harm to other motorists. The majority holds that summary judgment was improper because fact issues exist as to "whether Otis acted as a reasonable and prudent employer...." The majority thus confuses the *breach* of a duty—failure to exercise reasonable care—with the *existence* of a duty vel non.

In order to recover under a negligence cause of action, an aggrieved plaintiff must prove: a legal duty owed by one person to another, a breach of that duty, and damages proximately resulting from the breach. W. Prosser, *The Law of Torts* § 30, at 143 (4th ed. 1971). These inquiries should be kept separate.

In every case, the duty issue is the threshold inquiry; it must be determined before the issue of the defendant's negligent conduct can be reached or can be resolved. *Abalos v. Oil Development Co. of Texas,* 544 S.W.2d 627, 633 (Tex.1976). Therefore, a prerequisite to Otis' liability under the theory of primary negligence is a determination of whether it owed a duty to protect the public from the negligent acts of its intoxicated, off-duty employee. Whether a duty exists in a given case is a question of law to be determined by reference to the body of statutes, rules, and precedents that make up the law and must be determined only by the court. The jury is asked to determine breach and proximate cause only after the court has concluded that a duty exists. The duty question is one I will now address.

The concept of an affirmative duty to act has been addressed by this and other Texas courts on numerous occasions. Although the factual bases of these decisions have differed, the law has remained constant. Chief Justice Alexander, speaking for a unanimous Court in *Buchanan v. Rose,* 138 Tex. 390, 159 S.W.2d 109 (1942), enunciated the postulates underlying a duty to act as follows:

> There are many instances in which it may be said, as a matter of law, that there is a duty to do something, and in others it may be said, as a matter of law, that there is no such duty. Using familiar illustrations, it may be said generally, on the one hand, that if a party negligently *creates* a dangerous situation it then becomes his duty to do something about it to prevent injury to others if it reasonably appears or should appear to him that others in the exercise of their lawful rights may be injured thereby.

On the other hand, it may be said generally, as a matter of law, that a mere bystander who did not *create* the dangerous situation is not required to become the good Samaritan and prevent injury to others.

*Id.* 159 S.W.2d at 110 (emphasis added). This pronouncement remains the law in Texas today as surely as it was on the day of the *Buchanan* decision. *See Abalos v. Oil Development Co. of Texas,* 544 S.W.2d at 632–33; *Cactus Drilling Co. v. Williams,* 525 S.W.2d 902, 911 (Tex.Civ.App.— Amarillo 1975, writ ref'd n.r.e.); *Chrysler Corp. v. Dallas Power & Light Co.,* 522 S.W.2d 742, 744 (Tex.Civ.App.—Eastland 1975, writ ref'd n.r.e.); *Courville v. Home Transportation Co.,* 497 S.W.2d 788, 790–91 (Tex.Civ.App.—Beaumont 1973, writ ref'd n.r.e.); *Dallas Ry. & Terminal Co. v. Archer,* 167 S.W.2d 290, 293 (Tex.Civ.App. —Dallas 1942, writ ref'd w.o.m.). The key to this issue, as pointed out by the Court's language, is a determination of whether the defendant *created* the dangerous situation. The term "create" is defined to mean "to bring into existence," "to cause or to occasion," or "to bring about by a course of action or behaviour." *Webster's Third New International Dictionary* 532 (3d ed. 1961). The dangerous situation being litigated in this case was wholly the product of Robert Matheson. Otis played no part in creating the danger. *Buchanan* and its progeny demand that Otis be vindicated under the facts presently before this court.

Texas courts have recognized limited instances in which an employer may be held liable for a failure to control his servants when acting outside the course and scope of their employment. One exception concerns off-duty employees who are either on the master's premises or using a chattel owned by the master. *See Kelsey-Seybold Clinic v. Maclay,* 466 S.W.2d 716, 720 (Tex. 1971); *Restatement (Second) of Torts* § 317 (1965). Neither the employer's premises nor his chattels were involved in the Matheson-Clark accident; therefore, this exception is inapplicable.

A second exception giving rise to a duty to control the conduct of an off-duty employee regards instances in which the employer voluntarily and knowingly assumes a duty of control. The American Law Institute has promulgated the following provision covering this concept:

One who takes charge of a third person likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.

*Restatement (Second) of Torts* § 319 (1965); *accord Missouri, K. & T. Ry. Co. of Texas v. Wood,* 95 Tex. 223, 66 S.W. 449 (1902). The Clarks argue that Otis "took charge" of Matheson "as a consequence" of Roy's knowledge that Matheson was intoxicated. I disagree.

Section 319 requires more than *mere knowledge* of a person's dangerous propensities. For one person to "take charge" of another within the meaning of section 319, there must be a custodial relationship, one in which the person charged with controlling the conduct of another voluntarily assumes responsibility for that person. The summary judgment record shows, as a matter of law, that Otis did not voluntarily take Matheson into its custody or assume responsibility for his conduct. *Cf. Missouri, K. & T. Ry. of Texas v. Wood,* 95 Tex. at 233–34, 66 S.W. at 451. Roy's deposition clearly indicates that he at no time attempted to "take charge" of Matheson. Indeed, the basis of the Clarks' complaint and the court of appeals' holding is that Otis *failed* to take charge of Matheson by not preventing him from leaving the Otis plant.

The majority's proposed analogy to cases decided pursuant to *Restatement (Second) of Torts* § 319 is without basis. The illustrations provided by the drafters and the cases decided under this section reveal the fallacy of this reliance. Each instance in which liability was imposed dealt with persons of known dangerous propensities and obvious breaches of duty by those obliged to control the conduct of the individual causing harm. *See, e.g., Semler v. Psychi-*

*atric Institute of Washington, D.C.,* 538 F.2d 121 (4th Cir.1976), *cert. denied,* 429 U.S. 827, 97 S.Ct. 83, 50 L.Ed.2d 90; *Payton v. United States,* 636 F.2d 132, 146 (5th Cir.1981); *Harland v. State,* 75 Cal.App.3d 475, 480, 489, 142 Cal.Rptr. 201, 204, 210 (1977).

Apart from these two situations, however, an employer has no duty to exercise control over an off-duty employee.[1] One reason is because the employer lacks the corresponding legal right to exercise such control. The employment relation is consensual, and can be terminated by either party at any time and for any reason. *See East Line & R.R.R. Co. v. Scott,* 72 Tex. 70, 75, 10 S.W. 99, 102 (1888); *Maus v. National Living Centers, Inc.,* 633 S.W.2d 674, 675 (Tex.App.—Austin 1982, writ ref'd n.r.e.). Employees do not surrender their civil rights by virtue of their employment. Conversely, employers possess no immunity from false imprisonment suits and have no right to restrain or otherwise detain their off-duty employees against their will. *See Skillern & Sons, Inc. v. Stewart,* 379 S.W.2d 687 (Tex.Civ.App.—Fort Worth 1964, writ ref'd n.r.e.); *see also Newton v. Rhoads Bros.,* 24 S.W.2d 378, 379 (Tex. Comm'n App.1930, holding approved). *See generally James v. Brown,* 637 S.W.2d 914, 918 (Tex.1982) (false imprisonment consists of willful detention, without consent, and without authority of law). The majority, however, would confront the employer with a Hobson's choice between liability to his employee for false imprisonment and liability to third persons for the acts of his employee.

The cases relied upon by the majority have no bearing on the issue of duty in this case. This Court's decision in *Osuna v. Southern Pacific R.R.,* 641 S.W.2d 229 (Tex.1982), is not even tangentially related to the present cause. The majority, however, cites *Osuna* to support the proposi-

tion that when one engages in an affirmative course of conduct, he is bound to act in a reasonable manner. I do not dispute this proposition of law. This has been the rule in Texas at least since *Missouri, K. & T. Ry. Co. of Texas v. Wood,* 95 Tex. 223, 66 S.W. 449, and this policy is properly relied upon when one voluntarily and positively engages in affirmative conduct. In this case, it is clear that Otis did not voluntarily assume a duty to control Matheson. Neither Texas cases nor those of other jurisdictions have ever found "affirmative conduct" in a situation such as the one we have been asked to resolve in this case.

The majority also writes that the duty they impose "would not be based on the *mere knowledge* of Matheson's intoxication, but would be based on additional factors." Later, they write "we do not view this as a case of employer nonfeasance." I have closely scrutinized the opinion and have failed to find anything to tie these statements to the result reached. The *only* conceivable affirmative act committed by Otis was Roy's suggestion to Matheson that he go home. Is this sufficient upon which to predicate liability? I fail to see how the rule stated in the majority opinion results in liability under the facts of this case.

The majority opinion appears to be supported by law of other jurisdictions. On close examination, however, the inadequacy of that support is revealed. The case of *Leppke v. Segura,* 632 P.2d 1057 (Colo. App.1981), is not an employer-employee case. The issue was "whether one who voluntarily jump-starts an automobile for an obviously intoxicated person can be held liable to third persons for injuries sustained in a collision occurring shortly thereafter between their vehicle and the inebriated person's car which was being operated in a reckless manner." *Id.* at 1058. The court

---

1. The absence of an employer's duty to exercise control over its off-duty employees is illustrated by comment b to § 317 of the *Restatement,* which provides:

 He [an employer] is not required, however, to exercise any control over the actions of his employees while on the public streets or in a neighboring restaurant during the lunch interval, even though the fact that they are his servants may give him the power to control their actions by threatening to dismiss them from his employment if they persist.

relied on *Restatement (Second) of Torts* § 320, which is the "affirmative act" section, and specifically stated: "Here it is significant that, in providing a jump-start to Verrill's automobile, each defendant performed an affirmative act; this is not the same as a situation where there is an effort to predicate liability on a defendant's failure to stop an individual who is already engaged in dangerous behavior." *Id.* at 1059. The court concluded: "Because a finder of fact could conclude that, by jump-starting an automobile for an obviously drunken driver, thus *giving him mobility which otherwise he would not have had*, one or both of the defendants set into motion a force involving an unreasonable risk of harm to others, plaintiffs are entitled to a jury determination of breach of duty." *Id.* This is an obvious case of an affirmative act. I have found no case, in Colorado or elsewhere, that has construed *Leppke* in the manner this court has construed it.

The case of *Brockett v. Kitchen Boyd Motor Co.*, 264 Cal.App.2d 69, 70 Cal.Rptr. 136 (1968), is easily distinguishable from the case at bar. First, the negligent driver-employee, Huff, was a minor. Second, his illegal imbibing took place at an employer-sponsored party, in a social setting, and his employer induced him to partake of the intoxicants. Third, Huff was affirmatively placed in his automobile by his employer and directed to go home. On a second appeal of this cause, the same court stated the justification for its holding. The court stated that the decision was based upon the interpretation of a provision of the California Professions Code, which was held to have "impelled" the holding of liability. More importantly, the court specifically pointed out that its holding applied only to those cases in which an employer "did *knowingly make available* to the minor copious amounts of intoxicating beverages with knowledge that the minor was going to drive a vehicle upon the public highways." 24 Cal.App.3d 87, 100 Cal.Rptr. 752, 756 (1972) (emphasis in original). In our case, we have no minor, no alcohol furnished by the employer, and no

legislative basis for the decision. I find *Brockett* totally inapposite.

The third, and key, decision relied upon is *Robertson v. LeMaster*, 301 S.E.2d 563 (W.Va.1983). The court said: "The issue raised by the appellants is whether the appellee's conduct in requiring LeMaster to work over 27 hours and then setting him loose upon the highway without providing alternate transportation or rest facilities to its exhausted employee created an unreasonable risk of harm to others that was foreseeable." *Id.* at 567. The court emphasized that the employer *required* LeMaster to work 27 hours, refused his requests that he be allowed to go home, and provided transportation for every other employee on the jobsite except LeMaster. The court reasoned that these facts included "an element of affirmative conduct in requiring LeMaster to work unreasonably long hours and then driving him to his vehicle and sending him out on the highway in such an exhausted condition as to pose a danger to himself or others." *Id.* at 569. The key factor in *Robertson* is that the incapacity that ultimately caused the accident was one that arose because of the affirmative act of the employer—requiring LeMaster to work almost four consecutive shifts. This factor is noticeably absent in the case at bar. It is an unfair type of circuitous reasoning to say that Otis engaged in an "affirmative act" when it "affirmatively" failed to fire Matheson, or restrain him. If the rationale of this decision is followed, *any* omission or failure to act will be regarded as an affirmative act.

The West Virginia court in *Robertson*, in an unsatisfactory manner, attempts to distinguish *Pilgrim v. Fortune Drilling Co.*, 653 F.2d 982 (5th Cir.1981). In *Pilgrim*, an employee, Pillow, was required to work twelve hour shifts, and the location of the jobsite required that he drive three hours both to and from the jobsite. One day Pillow fell asleep on his way home and had an automobile accident involving Pilgrim. Pilgrim sued the employer alleging that it was negligent in that it "failed to prevent Pillow from driving on the highways when

its supervisory personnel knew or should have known that Pillow was so exhausted from work that his driving home would create an unreasonable risk of harm to other motorists." *Id.* at 985. A jury found in favor of Pilgrim, but the Fifth Circuit reversed and held that, as a matter of law, Texas law imposed no duty upon the employer to restrain or prohibit its exhausted employee from leaving the job. The *only* distinguishing factor in *Pilgrim* and the present controversy is that, in our case, Matheson left work before the end of his shift. This should not suffice to make *Pilgrim* inapplicable since Matheson could, and did, leave his job voluntarily by exercising a right attendant to his position. In both cases, once the employee left work he was no longer subject to the control of his employer.

As has been shown, only one published decision has been found that may be analogized to the benefit of the majority opinion. On the contrary, at least four other jurisdictions have wrestled with a problem that is similar to the one faced by this Court and have reached a conclusion directly opposed to that reached by the majority in this case.

The case most nearly on point is *Wienke v. Champaign County Grain Ass'n*, 113 Ill.App.3d 1005, 69 Ill.Dec. 701, 447 N.E.2d 1388 (1983). In *Wienke*, an employer served alcoholic beverages to its employee, Eiskamp. The employer, knowing Eiskamp to be intoxicated, drove him to his car four miles away and sent him home. Forty minutes later an accident occurred in which two persons were killed. The Illinois court noted that a dramshop act was in force in that state, yet found that the Act provided no basis for liability under the facts of the case. In addition, the court remarked that the employer-employee relationship did not suffice to give the employer the degree of control necessary to justify holding him responsible for the off-duty torts of his employees. The court concluded by noting the impracticability of a rule imposing liability under these facts and refused to impose a duty upon the employer.

In *Congini v. Portersville Valve Co.*, 458 A.2d 1384 (Pa.Super.1983), a minor employee was furnished alcoholic beverages by his employer to the extent that he became severely intoxicated. His employer had his car keys, and, although the employer knew the employee was intoxicated, gave him his keys so he could leave. The employee suffered serious personal injuries in a subsequent accident, and he sued his employer for damages. Although an employer-employee relationship was involved, the court stated that the question was whether a social host could be held liable under these facts. Dramshop legislation had been enacted in Pennsylvania, but the court refused to extend it to hold social hosts liable. *See also Manning v. Andy*, 454 Pa. 237, 310 A.2d 75 (1973) (per curiam). The court rebuffed the argument that, since a minor was involved, "extenuating circumstances" existed that would justify the imposition of liability. The practical implications of finding a duty were also brought into focus by the court's holding that "a social host is not privileged to use force against or impose confinement upon another for the purpose of preventing the violation of a statute, i.e., driving while under the influence." *Id.* 458 A.2d at 1386. The court concluded by finding no duty on behalf of the employer because of his obvious lack of control. Judgment was rendered for defendant.

In *Edgar v. Kajet*, 84 Misc.2d 100, 375 N.Y.S.2d 548 (1975), *aff'd*, 55 A.D.2d 597, 389 N.Y.S.2d 631 (1976), Kajet, an employee of Avis, attended a company party "at which liquor and other intoxicating beverages were served freely and dispensed without charge." After leaving the party, Kajet negligently drove his automobile, resulting in injuries to Edgar. Edgar sued Avis for damages. Although Edgar relied heavily on *Brockett*, the New York court concluded that no cause of action existed against Avis. The court refused to extend the scope of the state's dramshop act, holding that to do so would "open a virtual Pandora's box" of problems. Any duty in this context was said to be within the province of the legislature.

The final case of interest is *Halvorson v. Birchfield Boiler, Inc.*, 76 Wash.2d 759, 458 P.2d 897 (1969) (en banc). The court addressed "the question of whether an employer is liable to a third party who is injured by an employee who has become intoxicated at a company Christmas party." In this case, the employer furnished the employee, Wolf, with intoxicants. The employer knew that Wolf's driver's license had been revoked as a result of a prior accident and that he was an alcoholic, but furnished him liquor and permitted him to leave the party in an inebriated condition. Again, as in *Congini*, the court noted that the rule it announced would be applicable to social hosts. The court held that, in the absence of a legislative directive to the contrary, no liability would attach in this instance based upon the employer's allegedly negligent conduct. "Human beings, drunk or sober, are responsible for their own torts." *Id.* at 899. The court noted the holding of the California court in *Brockett*, but refused to follow that decision, saying that there "the employer had actually induced the improper operation of the auto." *Id.* The court affirmed the trial court's action in dismissing plaintiff's petition for failure to state a cause of action.

These four cases are indicative of what must be considered as the general rule that an employer is not liable under the facts presently before the Court. *See also Deloach v. Mayer Elec. Supply Co.*, 378 So.2d 733 (Ala.1979) (employer not liable); *Sanders v. Hercules Sheet Metal, Inc.*, 385 So.2d 772 (La.1980) (same); and *Anslinger v. Martinsville Inn, Inc.*, 121 N.J.Super. 525, 298 A.2d 84 (1972) (same). Numerous other jurisdictions have taken similar action in cases in which plaintiffs have attempted to seek liability under a "common-law dramshop" cause of action or in which plaintiffs have sought to extend the scope of existing dramshop legislation. No doubt, the trend is to the contrary of that espoused in the majority opinion. *See, e.g., Johnson v. I.B.E.W. Local 588 Properties*, 418 So.2d 885 (Ala.1982); *Kowal v. Hofher*, 181 Conn. 355, 436 A.2d 1 (1980); *Wright v. Moffitt*, 437 A.2d 554 (Del.1981); *Barber v.*

*Jensen*, 428 So.2d 770 (Fla.App.1983); *Lucido v. Apollo Lanes & Bar, Inc.*, 123 Mich.App. 267, 333 N.W.2d 246 (1983) (en banc); *Cole v. City of Spring Park Lake*, 314 N.W.2d 836 (Minn.1982); *Felder v. Butler*, 292 Md. 174, 438 A.2d 494 (1981); *Runge v. Watts*, 180 Mont. 91, 589 P.2d 145 (1979); *Bell v. Alpha Tau Omega Fraternity*, 642 P.2d 161 (Nev.1982); *Wright v. Sunset Recreation, Inc.*, 91 A.D.2d 701, 457 N.Y.S.2d 606 (1982); *Johnson v. Paige*, 47 Or.App. 1177, 615 P.2d 1185 (1980); *Wilson v. Steinbach*, 98 Wash.2d 434, 656 P.2d 1030 (1982) (en banc); and *Olsen v. Copeland*, 90 Wis.2d 483, 280 N.W.2d 178 (1979).

A short discussion of the probable effects of and the inadequacies in the majority opinion is now in order. The rule imposed is: "when, because of an employee's incapacity, an employer exercises control over the employee, the employer has a duty to take such action as a reasonably prudent employer under the same or similar circumstances would take to prevent the employee from causing an unreasonable risk of harm to others."

The first problem posed by this rule, which is distinctly present in the case at bar, is what action may be taken by an employer that will be considered as his having "taken control" over the employee. Taking control, presumably, is the "affirmative act" upon which the duty is predicated. The *only* allegation by Clark upon this subject is in his Response to Defendant's Motion for Summary Judgment, in which Clark alleged: "Defendant's *failure to control* Matheson so as to prevent him from harming others breached said duty as a matter of law and was the proximate cause of the damages prayed for by Plaintiffs." The entire basis of Clark's cause of action is Otis' failure to control Matheson. If this is an "affirmative act" upon which liability may be found, "omissions," "nonfeasances," and "inaction" no longer exist in Texas.

Arguably, a social host or a commercial vendor of intoxicants possesses a higher degree of culpability than that possessed

by Otis. These individuals intentionally and knowingly provide alcoholic beverages to others and they intend and know that the probable result will be intoxication. Further, they know that some drinkers will drive after having become intoxicated. Otis' culpability was, at best, negligence in failing to discover Matheson's drinking and to put an end to it. The trial and appellate courts will feel compelled to impose liability on anyone who furnishes or sells intoxicants to another as a result of the majority opinion.

The majority provides no guidance as to what "condition" will lead to liability. Two examples will suffice to expose the fallacy of this terminology. First, assume an employee has a history of heart trouble and has had open heart surgery. He comes to work, experiences chest pains, complains to his employer, and is asked to leave or is sent home to rest. If, on the way home, he suffers a heart attack and is involved in a wreck, the rule pronounced by the majority would make the employer liable for failing to act. Second, assume the same facts except the employee left his glasses at home, is sent home to get them, and is involved in a wreck. Again, the employer would be liable for the injuries to the third person.

Next, what is the action that a "reasonably prudent employer" must take to avoid liability under this rule? Concededly, the facts of this one case make this appear a simple question since Otis maintained a nurse's station for ill employees. The rule of this case, however, will apply to small and large employers alike, and most small employers have no such facility, nor do they have the practical ability to take the other steps suggested by the majority. Must the employer physically restrain the "incapacitated" employee? If this type of duty is to be imposed upon employers, they must be given a corresponding legal right to take this action—a right that they do not currently possess. Many employees work in places and conditions such that the alternatives suggested by the majority are totally unworkable. The usual practice among employers who find that an employee is incapacitated is to allow the employee to leave work and seek medical or other aid on his own. It would appear that this will no longer be sufficient. In an attempt to do justice in this one case, the majority has placed an impractical and unreasonable duty upon *all* employers.

The unstated premise of the majority opinion is that holding parties such as Otis liable will somehow reduce the number of accidents caused by drunk drivers and will assure adequate compensation for victims such as the Clarks. As a practical matter, however, reducing the number of such accidents and compensating accident victims can and should be accomplished in a more direct and efficient manner by comprehensive legislation.[2] *Garcia v. Hargrove*, 46 Wis.2d 724, 176 N.W.2d 566 (1970). The consequences of today's decision cannot be overstated, notwithstanding the majority's disclaimer that it has not judicially adopted "dram shop" liability.[3]

Those courts and legislatures that have adopted dramshop liability have, in part, based on their conclusions on the theory that liability imposed pursuant to such a law was an incident of being engaged in

---

2. The scope of the problem is enormous. During the past session of the legislature, for example, no less than 22 bills relating to drunk driving were introduced in the Texas House of Representatives alone. One such measure would have established a compensation fund for the victims of drunk drivers. Tex.H.B.1809, 68th Leg. (1983). House Bill 1809, however, died in committee. House Bill 708, the "Proprietors Responsibility Act," would have imposed liability upon persons who knowingly sell liquor to an intoxicated person but did not pass.

3. Dram shop liability refers to the statutory liability of commercial vendors of alcoholic beverages for the torts of their customers. At common law it was not a tort to sell or give intoxicating liquor to an "able-bodied man," and there was no cause of action against the person furnishing the liquor. This was because the law deemed the consumption rather than the serving of liquor as the proximate cause of an accident. In order to abrogate the common law rule, a minority of states have enacted civil liability statutes or, as they are more commonly called, dram shop acts.

the business of serving alcohol. No such justification exists in this case. I would be unwilling to expose an employer to similar liability when the employer has played no part in contributing to the employee's intoxication. *Accord Calrow v. Appliance Industries, Inc.,* 49 Cal.App.3d 556, 122 Cal.Rptr. 636 (1975); *Richardson v. Ansco, Inc.,* 75 Ill.App.3d 731, 31 Ill.Dec. 599, 394 N.E.2d 801 (1979).

It is no answer to state that liability is imposed on Otis because of the "particular" facts of this case. We are an appellate court of last resort; the impact of our decision in one case necessarily reaches beyond the facts of that case. The result the majority reaches in this case will no doubt reinforce cynical public attitudes that tort liability is not based upon fault, but upon ability to satisfy a judgment. *E.g., Delving Into Deep Pockets,* Time, June 13, 1983, at 54. Further, by allowing the Clarks to shift the burden of liability from Matheson's estate to Otis, the majority erodes the concept that an individual is responsible for his or her own actions. I would adhere to the rule that an employee is not acting in the course and scope of his employment while traveling to and from work and that the employer will not be held liable to one injured by the employee's negligent operation of an automobile during these trips to and from work. It is well settled in Texas that a person is under no duty "to anticipate negligent or unlawful conduct on the part of another." *DeWinne v. Allen,* 154 Tex. 316, 320, 277 S.W.2d 95, 98 (1955); *Texas N.O.R. Co. v. Brannen,* 140 Tex. 52, 55, 166 S.W.2d 112, 114 (1942); *Fort Worth & D.C. Ry. Co. v. Shetter,* 94 Tex. 196, 199, 59 S.W. 533, 535 (1900); *Minugh v. Royal Crown Bottling Co.,* 267 S.W.2d 861, 865 (Tex.Civ.App.—San Antonio 1954, writ ref'd); *Lumpkins v. Thompson,* 553 S.W.2d 949, 952 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.); *Bodine v. Welder's Equipment Co.,* 520 S.W.2d 407, 413 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.); *Missouri Pacific R. Co. v. Corpus Christi Hardware Co.,* 414 S.W.2d 185, 187 (Tex.Civ.App.—Corpus Christi 1967, no writ).

The duty the majority has imposed on Otis Engineering Company is not supported by either statute or precedent. The issue of whether a duty exists in a given case is a question for the court. No court in any jurisdiction has ever held that an employer who has not contributed to an employee's state of intoxication will be liable for that employee's off-duty, off-premises torts. Proper judicial restraint compels the conclusion that, as a matter of law, Otis Engineering Company owed no duty to control the conduct of Matheson. I would reverse the judgment of the court of appeals and affirm the judgment of the trial court.

POPE, C.J., and BARROW and CAMPBELL, JJ., join.