Affirmed and Opinion filed August 8, 2002









Affirmed
and Opinion filed August 8, 2002.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-01-00648-CV

____________

 

NOBLE GINTHER, III, and LISA GINTHER,
EACH INDIVIDUALLY

and a/n/f FALLON
GINTHER, DECEASED,
Appellants

 

V.

 

DOMINO’S PIZZA, INC., Appellee

 



 

On Appeal from the 164th District Court

Harris County, Texas

Trial Court Cause No. 2000-26982

 



 

O P I N I O N








This is a wrongful death suit brought against Domino’s Pizza,
Inc.[1]
(“Domino’s”) by appellants, Lisa and Noble Ginther, III (“the Ginthers”), whose
teenage daughter died in a car accident with the car of an off-duty Domino’s
delivery driver.  On appeal, the Ginthers
argue that the trial court erred in granting Domino’s motion for summary
judgment because (1) Domino’s had a duty to ensure the mechanical reliability
of the vehicles used to deliver its pizza products; (2) Domino’s had a duty to
confirm that its pizza delivery drivers had liability insurance on their vehicles;
and (3) Domino=s owed a duty as a matter of
law.  We affirm the judgment of the trial
court.




Background

The Ginthers’ daughter was killed in an auto accident when
the vehicle she was riding in struck a stalled car[2]
on a freeway.  The driver and owner of
the stalled car, Quincy Howard, Jr. was an off-duty Domino’s employee.  Domino=s delivery personnel use their own
vehicles to deliver pizzas.  Domino’s
performs a cursory vehicle inspection of their vehicles to verify insurance
coverage and to check items such as brakes, lights, and tires.  Domino’s inspected Howard’s car three months
prior to the accident, finding that Howard had insurance coverage and his car
had one broken tail light.  

On the night of the accident, Howard left work at 11:30
p.m.  He later picked up some friends and
was driving them home when his car stalled. 
The accident occurred at approximately 1:15 a.m., almost two hours after
Howard left Domino’s.  Howard stated in
his summary judgment affidavit that he conducted no business on behalf of
Domino=s after leaving the store at 11:30
p.m. and that his trip was strictly personal in nature.

The Ginthers brought a negligence cause of action
individually and on behalf of their minor daughter against Domino’s.  Domino’s filed a motion for summary judgment
urging that no basis for respondeat superior liability existed and that
Domino’s owed no duty to the Ginthers. 
The trial court granted Domino=s motion, and this appeal followed. 








Discussion

1.         Standard of Review

In a motion for summary judgment, the movant has the burden
to show, with competent proof, that no genuine issue of material fact exists
and that it is entitled to judgment as a matter of law.  Nixon v. Mr. Property Mgmt. Co., 690
S.W.2d 546, 548‑49 (Tex. 1985); Tex.
R. Civ. P. 166a(c).  In deciding
whether a material fact issue exists, we resolve every reasonable inference in
favor of the non-movant and take all evidence favorable to the non-movant as
true.  See Science Spectrum, Inc. v.
Martinez, 941 S.W.2d 910, 911 (Tex. 1997); Nixon, 690 S.W.2d at
548-49.  Summary judgment for the
defendant is proper only if, as a matter of law, plaintiff could not succeed on
any theory pled.  Delgado v. Burns,
656 S.W.2d 428, 429 (Tex. 1983).  When
the trial court does not specify the grounds upon which the summary judgment
was granted, the reviewing court will affirm the judgment if any one of the
theories advanced in the motion is meritorious. 
Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989).

2.         The Issues

a.         Is Domino’s liable under a theory of respondeat superior?








The essential elements of a negligence cause of action are
(1) a legal duty owed by one person to another, (2) a breach of that duty, and
(3) damages proximately caused by the breach. 
Greater Houston Transp. Co. v. Phillips,
801 S.W.2d 523, 525 (Tex. 1990).  The
existence of a legal duty is the threshold requirement in a negligence
case.  Id.  As a general rule, there is no duty to
control the conduct of another.  Otis Eng’g Corp. v. Clark, 668 S.W.2d 307, 309 (Tex.
1983).  However, employers may be held
liable for the negligent acts of their employees under a theory of respondeat
superior if the employee’s actions are within the course and scope of their
employment.  Mata v. Andrews Transp., Inc., 900 S.W.2d 363, 366 (Tex. App.CHouston [14th Dist.] 1995, no
writ).  In order to meet this exception,
the employee’s act must be (1) within the employee’s general authority, (2) in
furtherance of the employer’s business, and (3) taken to accomplish the object
for which the employee was hired.  Id.
 

Here, it is undisputed that Howard’s shift had ended and that
he left work almost two hours before the accident.  Howard’s affidavit, included in Domino’s
summary judgment evidence, recited that the purpose of his trip was strictly
personal and unrelated to his employment with Domino’s.  Therefore, Howard was not acting within the
general authority granted to him by Domino’s at the time of the accident, and
his actions were not in furtherance of Domino’s business.  Finally, the object for which Howard was
hired was to deliver pizzaCnot to drive around with his friends.  Because Howard=s actions fall outside  the course and scope of his employment, we
hold his alleged negligence cannot be attributed to Domino=s under a theory of respondeat
superior.

b.         Did Domino=s owe a legal duty to the Ginthers?

The Ginthers also assert that (1) Domino’s has a duty to
check the mechanical reliability of its drivers’ vehicles, and (2) Domino’s has
a duty to confirm that its drivers maintain liability insurance on the vehicles
used to deliver Domino=s product.[3]  The Ginthers claim these duties exist because
it is foreseeable that Domino’s practice of hiring youthful drivers who use
their own vehicles will result in personal injury proximately caused by
mechanical failure.  Alternatively, the
Ginthers allege that Domino’s voluntarily 
assumed these duties.  However,
the Ginthers do not cite any evidentiary or legal authority to support such an
expansion of employer liability.

(i)        Domino’s did not have a common-law duty
to the Ginthers.








As a general rule, there is no duty to control the conduct of
another.  Otis, 668 S.W.2d at
309.  An employer is only liable for its
employees’ off-duty torts when they are committed on the employer’s premises or
with the employer’s chattels.  Id.  Here, Howard was off duty, and it is
undisputed that Howard was not using Domino’s chattelsChe was driving his own car at the
time of the accident.  And, the accident
did not take place on Domino’s property; it occurred on a public freeway.  Therefore, a duty will be imposed on Domino’s
only if the facts of this case fit within the narrow exception carved out by Otis.  

In Otis, the Supreme Court recognized that an employer
does have a duty to third parties when, because of an employee=s incapacity, the employer exercises
control over the employee.  Id. at
311.  The linchpin of the Otis duty
of care is control.  See Graff
v. Beard, 858 S.W.2d 918, 920 (Tex. 1993); Greater Houston Transp. Co., 801 S.W.2d at 526.  Otis involved an employee who had
drinking problems; he drank even during work, a fact known to fellow workers
and at least one supervisor.  Otis,
668 S.W.2d at 308.  One evening, the
employee was sent home early because it was apparent to his co-worker and
supervisor that he was intoxicated. 
Testimony showed that the employee’s alcohol content was so high his
condition would have been apparent to his co-worker and supervisor.  Id. 
The supervisor told the employee to go home, yet he allowed the employee
to drive himself.  A fatal accident
occurred not long after the employee left work. 
The Court held that the employer assumed a duty by exercising
control.  It exercised control when,
recognizing the employee’s incapacity, its supervisor sent him home.  Id. at 311.  The court held that a fact issue existed as
to whether the Otis supervisor had acted as a reasonably prudent employer when
he told the employee to go home rather than keeping him at the plant, having
someone drive him home, or having someone pick him up from the plant.  Id.








Domino’s distinguishes its situation from Otis.  It contends that, as an employer, it had no
right to control Howard’s behavior after he clocked out at 11:30.  The Ginthers point to no evidentiary or legal
authority tending to show that Domino’s had the authority to control its
employees’ actions relating to vehicle maintenance or insurance coverage while
off duty.  Nor do they point to any
evidence tending to show that Domino’s had actual knowledge of mechanical
failure in Howard’s car or a lack of insurance coverage.  We find Domino’s does not have a duty at
common law to determine the mechanical reliability of the vehicles used by its
delivery drivers or to ensure that its drivers maintain liability insurance on
their vehicles.  

(ii)      We decline to impose a new duty.

Alternatively, the Ginthers ask us to impose a new duty on
employers.  Specifically, they argue that
Domino=s had a duty to inspect its drivers’
vehicles to determine their mechanical reliability and to ensure that its
drivers carried insurance when making deliveries. As we explain below, we
decline to expand employer liability in such a fashion.  Deciding whether to impose a new common-law
duty involves complex considerations of public policy including “social,
economic, and political questions, and their application to the particular
facts at hand.”  Mitchell, 786 S.W.2d
at 662 (quoting 1 Texas Torts and
Remedies 1.03[2](b) (1989)). 
Several factors are considered in establishing a new dutyCincluding the extent of the risk
involved and the foreseeability and likelihood of injury.  Graff v. Beard, 858 S.W.2d at 920
(citing Greater Houston Transp. Co., 801 S.W.2d
at 525).  These factors must be weighed
against the social utility of the actor=s conduct, the magnitude of the
burden of guarding against the injury, and the consequences of placing the
burden on the defendant.  Id.  








The Ginthers assert that it was foreseeable that Domino’s
drivers’ vehicles would cause accidents as a result of mechanical failure.  However, the Ginthers fail to cite any
evidence supporting their assertion.  The
youthfulness of the drivers and their relatively low wages are insufficient to
make it foreseeable that necessary mechanical repairs would not be undertaken
or that insurance coverage would not be maintained.  Additionally, there is nothing in the record
to indicate the cause of Howard’s stalled car. 
Because of the preceding facts, we cannot agree that Domino’s could have
foreseen that mechanical failure of Howard’s car would cause an accident.  Furthermore, the record does not contain any
evidence relating to the likelihood of a car accident caused by mechanical
failure.  As for the risk and extent of
injury, the use of a motor vehicle almost invariably involves some risk of
property damage, personal injury, or death, and the Ginthers point to no
evidence tending to show that this risk was increased by Howard=s employment with Domino=s. 
In fact, if anything, one could assume that because they receive wages
from Domino=s, the drivers would be more likely
(rather than less likely) to be able to afford, and therefore have, insurance
coverage.

Although the utility of pizza delivery is subjective and
difficult to quantify, the burden placed on employers like Domino=s would be enormous.  Employers might have to inspect their
employees’ vehicles constantly, because mechanical problems could arise at any
time.  And because a driver can lose
insurance coverage at any time, under the proposed duty, employers would have
to confirm coverage for each driver on a daily basis.  

Many businesses potentially could be subjected to this
burden, for many employees are required to use their cars in their jobsClawyers, accountants, computer
specialists, sales persons, nurses or physical and occupational therapists visiting
homes of clients, just to name a few.  If
we were to hold that Domino’s was required to ensure the mechanical viability
of its employees’ vehicles and to ensure their insurance coverage at all times,
many employers could be subject to this same duty.  The magnitude of this burden is
enormous.  Yet, the Ginthers fail to cite
to any authority that would support such an expansion of employer liability or
to give us any evidence supporting the imposition of this burden.  








Under the proposed duty, liability would be imposed
regardless of whether the vehicle was being used for business or personal use
at the time of the accident, and regardless of whether the employee was in the
course and scope of his employment.  The
consequence of placing this burden on an employer could be to make it an
insurer of its employees 24-hours-a-day. 
The Ginthers provide no legal authority from any jurisdiction for such
an expansion of employer liability.  Nor
do they suggest any logical place to draw a line limiting liability.  We decline to impose this duty.

(iii)     Domino=s did not voluntarily assume a duty to the Ginthers. 

The Ginthers also contend that Domino’s voluntarily assumed a
duty to inspect its drivers’ personal vehicles to determine their mechanical
reliability and to confirm that employees had insurance coverage.  As stated above, we disagree.  The Ginthers have not cited, and we have not
found, any case in which a court has imposed liability based on facts such as
these.  The closest case law is Otis
Engineering and its progeny, but even Otis is much more
restrictive than this fact scenario.  

Under Otis, the employer assumed a duty over its
employee=s off‑duty conduct because it
was aware of his incapacity, yet affirmatively controlled the employee by suggesting
that he drive home drunk.   See Otis, 668 S.W.2d at 311.  In Otis, the employee=s disability was obvious, and it was
acknowledged by the employer.  Id.
at 308.  But here, Howard’s car did
not become incapacitated until nearly two hours after he left work.  Consequently, Domino=s could not have been Aaware@ of any incapacity or
disability.  

Moreover, not even the Restatement of TortsCwhich frequently recognizes duties
before many states adopt themCwould support a duty under these facts.  See Texaco, Inc. v. Pennzoil, Co., 729
S.W.2d 768, 859-60 (Tex. App.CHouston [1st Dist.] 1987, writ ref=d n.r.e.).  The section of the Restatement that the
Ginthers cite is section 324 A, Restatement
(Second) of Torts (1965), but the examples in the Restatement are more
narrow than the facts here:  

The A telephone company employs B to inspect its
telephone poles.  B negligently inspects
and approves a pole adjoining the public highway.  Because of its defective condition, the pole
falls upon and injures a traveler upon the highway.  B is subject to liability to the
traveler.  








Restatement
(Second) of Torts ' 324 A cmt. d, illus. 2
(1965).  

Likewise, each of the other examples under the section
involves an affirmative negligent act by a party by which they undertook to
repair something that was broken or to render a service.  See id. at illus. 1, 3.  We do not have that here. 

The only evidence the Ginthers point to in support of an
alleged assumption of duty is the cursory inspection Domino’s performed on
Howard=s car three months before the
accident.  Qualitatively, this is not the
same sort of undertaking contemplated in the Restatement.  Furthermore, these routine inspections only
cover problems that a state inspection would detect.  Domino’s is entitled to assume that its
employees are following the law and that their cars would pass the routine
safety inspections as required by state law. 
We do not find that this inspection constitutes an affirmative act of
control, as contemplated by Otis. 
Consequently, we find that Domino’s did not voluntarily assume a duty to
the Ginthers.       We overrule this
issue.

c.         Did the trial court err in granting
Domino’s motion for summary judgment?

In their final issue on appeal, the Ginthers assert that the
trial court erred in granting Domino=s motion for summary judgment,
essentially finding as a matter of law that Domino=s owed no duty.  Because the Ginthers could not succeed on any
of the theories pleaded, we find that summary judgment for Domino=s was proper.  We overrule this complaint.  








In short, we recognize the tragedy the Ginthers have had and
their desire to impose liability; however, the law does not support the
imposition of a duty on Domino’s.  The
judgment of the trial court is affirmed.

 

/s/        Wanda McKee
Fowler

Justice

 

Judgment rendered and Opinion
filed August 8, 2002.

Panel consists of Justices Hudson,
Fowler, and Duggan.*

Publish C Tex. R. App.
P. 47.3(b).

 

 

 

 

 

 

 

 

 

 

 

 

 

*Retired Justice Lee Duggan, Jr.
participating by assignment.











[1]  In its brief
to this court, appellee identifies itself as Domino’s Pizza, LLC, incorrectly
sued as Domino’s Pizza, Inc.  There is no
indication in the record that Domino’s previously raised this issue.





[2]  The Ginthers
state the car Astalled@ and
Domino’s states the car “became inoperable.” 
The record does not contain any evidence as to why Howard=s car was stopped on the freeway.





[3]  The Ginthers
treat this issue very summarily in their brief; we address it only out of an
abundance of caution.