



# OPINION

No. 04-10-00388-CV

Maria de los Angeles **SALINAS**, et al.

and

Rosalinda Netro, et al.,
Appellants

v.

**BRIGGS RANCHES**, et al.,
Appellees

From the 229th Judicial District Court, Starr County, Texas
Trial Court No. DC-04-66
Honorable Alex William Gabert, Judge Presiding

Opinion by:     Phylis J. Speedlin, Justice

Sitting:        Phylis J. Speedlin, Justice
                Rebecca Simmons, Justice
                Steven C. Hilbig, Justice

Delivered and Filed:  May 25, 2011

AFFIRMED

        Maria de los Angeles Salinas, et al. challenges a take-nothing judgment rendered in favor

of Briggs Ranches.  We affirm the trial court's judgment.

### FACTUAL BACKGROUND

Jose Luis Ochoa was hired by Briggs Ranches in the fall of 2002 to work as a ranch hand on El Mileno Ranch, a 6,000-acre cattle ranch located in Starr County. Briggs Ranches's general manager, Joe Jones, interviewed Ochoa and decided to hire him after Ochoa was recommended by a local merchant. Ochoa's direct supervisor was Johnny Light, the ranch manager. After a few days on the job, Ochoa and his wife were invited to live on the ranch in a trailer house. Briggs Ranches also hired Lane & Reeves Construction Company to build concrete water tanks on the ranch. On the evening of January 6, 2003, Lane & Reeves requested that its crew be permitted to stay at the ranch to avoid renting motel rooms or driving back to Alice. One of the Lane & Reeves owners, Dutton Lane, stayed in cabins with the crew, which included brothers Eugene and Victor Salinas as well as Ruben Vela. Ochoa and his wife were the only people affiliated with Briggs Ranches present at the ranch that night. In fact, the only other person who lived on the ranch, Light, was in Victoria that night.

At about 6:00 p.m., Ochoa saw the Lane & Reeves crew arriving at their cabins and began talking to Eugene. Ochoa still needed to feed the horses, and Eugene and Victor accompanied him during that task; then Ochoa gave them a brief tour of the ranch. The three men returned to the cabins, and Ochoa gave the crew meat and firewood and started a fire. Ochoa then went to his trailer to get his car and returned with his television, a VCR, and some movies for the crew to watch. Between 7:00 and 8:00 p.m., Ochoa, Eugene, and Victor made a beer run in Ochoa's car. Ochoa drove down the main ranch road, onto the highway, and to the Super Circle Seven convenience store. The three men returned with a 24-pack of beer, which was shared by seven men, including Lane.

At about 11:00 p.m., Ochoa, Vela, Eugene, and Victor returned to the store to buy more beer. Knowing that he had been drinking, Ochoa decided to stay on the ranch instead of risk driving on the adjacent highway. He drove two miles along a dirt road just inside the ranch's 8-foot game fence. The fence had a gate next to the convenience store. The gate was locked, so the group of men climbed over the fence, bought two 12-packs of beer, and returned to Ochoa's car. Ochoa drove back on the dirt road until he reached the paved main ranch road. At that time, Ochoa sped up, driving over 90 mph, and crashed into a tree. Vela and Eugene died in the wreck. Victor suffered a broken leg and a head laceration. Ochoa pleaded guilty to two counts of manslaughter and was sentenced to a term of confinement.

Maria de los Angeles Salinas, individually as surviving spouse of Eugene Isidro Salinas, on behalf of the Estate of Eugene Isidro Salinas, and as next friend of the minor children of Eugene Isidro Salinas, deceased (i.e., Geno Salinas, Aliyah Bella Salinas, and Malcolm Eugene Salinas); Peggy Salinas, individually as surviving natural mother of Eugene Isidro Salinas, deceased; Isabel Hernandez, individually as surviving spouse of Ruben Vela, Jr., on behalf of the Estate of Ruben Vela, Jr., and as next friend of the minor children of Ruben Vela, Jr., deceased (i.e., Savannah Vela and Stephanie Vela); and Victor Isidro Salinas (collectively, Salinas)[1] sued Briggs Ranches[2] for negligence and gross negligence, alleging theories of respondeat superior and negligent hiring and retention.

At trial, Salinas argued that Briggs Ranches should have checked Ochoa's driving record and criminal background before hiring him. Had they done so, they would have discovered that

---

[1] Rosalinda Netro, as next friend of Leslie Vela, minor child of Ruben Vela, Jr., deceased, and Monique Moreno Benavides, individually, as child of Ruben Vela, Jr., deceased, intervened in the lawsuit.

[2] Salinas's original petition named Briggs Ranch Ltd. d/b/a Briggs Ranch and Briggs Ranch Management L.L.C. as defendants. Later versions of the petition named R.W. Briggs, Jr. d/b/a Briggs Ranches as defendant. Mr. Briggs died before trial and his estate, with Eugene E. Becker, Jr. acting as the legal representative, took his place as a defendant. Our use of the term "Briggs Ranches" refers to Briggs and his estate in their role as a defendant in this suit.

Ochoa served time in prison for auto theft, and that he had also been convicted of unauthorized use of a motor vehicle; Ochoa was released from prison in 1990. Additionally, Ochoa was involved in a previous accident where he fell asleep at the wheel after drinking and crashed his car into a tree; Ochoa was not cited or prosecuted for that accident. Ochoa testified that if Briggs Ranches had asked him about his prior convictions, he would have answered truthfully. Jones testified that he did not check Ochoa's driving record because Jones did not hire Ochoa to drive any ranch vehicles. Regarding a criminal background check, Jones did not know of any ranching operation that conducted such checks on its ranch hands.

Additionally, Salinas argued that Briggs Ranches should have fired Ochoa after the so-called "Renteria incident" on November 28, 2002. This incident occurred shortly after he was hired when the ex-husband of Ochoa's wife, a man referred to as Renteria, came to the ranch to visit his children. Ochoa and Renteria drank some beer. Ochoa felt he had too much to drink and his wife did not feel like driving, so they told Renteria to stay overnight. Later that night, Renteria left the ranch in Ochoa's car. Ochoa called the police and followed on a tractor. He saw pieces of his car and discovered that Renteria hit a cow.

The next day, Ochoa called Light about the incident and admitted he and Renteria had been drinking. Light told Ochoa that Renteria was not allowed to come back to the ranch, and admonished Ochoa to slow down his drinking and to not let things "escalate the way it did." Light did not testify because he died before trial; however, Light talked with Jones about the incident and Jones testified regarding their discussion. Jones stated that the incident "wasn't completely [Ochoa's] fault," and Jones did not recommend his termination or look further into his background as a result of the incident. Instead, Jones recommended that Light visit Ochoa, reprimand him, and advise him that similar incidents would not be tolerated. Although Jones

knew Ochoa and Renteria had been drinking, he did not believe that they were drunk. After seeing that the cow was not hurt, he concluded that Renteria had not been driving very fast. Jones testified that El Mileno Ranch did not have any policies in place—written or otherwise—regarding employee conduct.

Three liability questions were submitted to the jury. The first question asked, "Did the negligence, if any, of those named below proximately cause the occurrence in question?" The jury answered "yes" as to Ochoa, Eugene Salinas, Ruben Vela, Victor Salinas, and Lane & Reeves, but answered "no" as to Briggs Ranches. Question No. 2 asked whether Ochoa was acting in the course and scope of his employment on the occasion in question; the jury answered "no." The third question asked, "Was the negligence of Jose Luis Ochoa which you found in Question No. 1 committed by an employee of Briggs Ranches on premises under the possession and control of Briggs Ranches?" Again, the jury answered "no." In accordance with the jury's verdict, the trial court rendered a take-nothing judgment in favor of Briggs Ranches.

On appeal, Salinas challenges the jury's "no" answer to Question No. 3.[3] She argues that under *Otis Engineering*,[4] an employer is liable for the torts committed by its off-duty employee on the employer's premises. Thus, Salinas maintains the jury's answer to Question No. 3 is not

---

[3] Salinas raises five related issues on appeal as follows: (1) Under *Otis Engineering* as applied to the facts of this case, is the employer liable for the torts of its employee which were committed on the employer's premises regardless of whether the employee was on or off the clock?; (2) Was the jury's finding that the negligent conduct of Jose Luis Ochoa was not committed by a Briggs Ranch employee on the premises of the ranch unsupported by legally sufficient evidence?; (3) Was the jury's finding that the negligent conduct of Jose Luis Ochoa was not committed by a Briggs Ranch employee on the premises of the ranch unsupported by factually sufficient evidence?; (4) Was the jury's finding that the negligent conduct of Jose Luis Ochoa was not committed by a Briggs Ranch employee on the premises of the ranch contrary to the parties' stipulations?; and (5) Does the jury's finding against the evidence and stipulations in the case warrant a reversal and retrial of all issues? Salinas does not challenge the jury's answers to Questions No. 1 and No. 2.

[4] *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex. 1983).

supported by the evidence[5] and stipulations in the case, warranting a reversal of the judgment and retrial of all issues.

### STANDARD OF REVIEW — SUFFICIENCY OF THE EVIDENCE

"When a party attacks the legal sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). In conducting a legal sufficiency review, we review the evidence presented at trial in the light most favorable to the jury's verdict, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 770 (Tex. 2010); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). If there is no evidence to support the finding, then we examine the entire record to determine whether the contrary proposition is established as a matter of law. *Dow Chem. Co.*, 46 S.W.3d at 241. Thus, Salinas's issue will be sustained only if her position is conclusively established by the evidence. *Id.*

A party challenging the factual sufficiency of a jury finding upon which that party had the burden of proof must demonstrate that "the adverse finding is against the great weight and preponderance of the evidence." *Id.* at 242. We must first examine the record to determine if there is some evidence to support the finding. *Id*. at 241-42. If there is, we must then determine whether "the finding is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust, or if the great preponderance of the evidence clearly supports its non-existence." W. Wendell Hall, *Hall's Standards of Review in Texas*, 42 ST. MARY'S L. J. 1, 42 (2010) (quoting *Castillo v. U.S. Fire Ins. Co*., 953 S.W.2d 470,

---

[5] Salinas argues the evidence is both legally and factually insufficient to support the jury's "no" answer to Question No. 3.

473 (Tex. App.—El Paso 1997, no writ)). Regardless of whether the "great weight" challenge is to a finding or a non-finding, "[a] court of appeals may reverse and remand a case for new trial [only] if it concludes that the jury's 'failure to find' is against the great weight and preponderance of the evidence." *Ames v. Ames*, 776 S.W.2d 154, 158 (Tex. 1989).

DISCUSSION

### *Otis Engineering*

Salinas contends that one sentence from *Otis Engineering Corp. v. Clark*, 668 S.W.2d 307 (Tex. 1983), controls this appeal, i.e., that an employer is liable for the off-duty torts of his employees which are committed on the employer's premises or with the employer's chattels. *Id.* at 309. Accordingly, we begin our analysis by first examining *Otis Engineering*.

In *Otis Engineering*, the husbands of two women killed in an automobile accident sued Otis Engineering Corp. for wrongful death based on the actions of Robert Matheson, an Otis employee, who caused the fatal accident shortly after leaving work. *Id*. at 308. Matheson had a history of drinking on the job, and had gone to his car to consume alcohol several times on the day of the accident. *Id.* "Matheson's extreme state of intoxication was well known to his supervisor and fellow workers," causing several employees to report to the Otis supervisor that Matheson was exhibiting signs of some incapacity, perhaps intoxication. *Id.* Halfway through his shift, the supervisor suggested that Matheson drive home. *Id.* While escorting Matheson to the parking lot, the supervisor asked if Matheson was all right and could make it home, and Matheson answered in the affirmative. *Id.* Matheson caused the fatal automobile accident thirty minutes later.[6] *Id.* His blood alcohol level was 0.268, a level at which the medical examiner testified all persons would exhibit signs of intoxication observable to the average person. *Id.*

---

[6] We note that *Otis Engineering* did **not** involve a tort on the employer's premises.

Against this factual background, the *Otis Engineering* court grappled with what duty, if any, the employer owed to the third parties injured by Matheson's conduct. *Id*. at 310. The court weighed the familiar factors of risk, foreseeability, and likelihood of injury against the burden of guarding against the injury and the consequences of placing that burden on the employer. *Id.* at 309. The court ultimately imposed a duty, holding that, "when, because of an employee's incapacity, an employer exercises control over the employee, the employer has a duty to take such action as a reasonably prudent employer under the same or similar circumstances would take to prevent the employee from causing an unreasonable risk of harm to others." *Id.* at 311. Based upon this holding, the court found that Otis did owe a duty to the families of the women killed by Matheson, and further found that a fact question existed as to whether Otis acted as a reasonable and prudent employer in sending Matheson home in an obviously intoxicated state. *Id*.

Prior to reaching its holding, the *Otis Engineering* court noted as part of its duty analysis:

In order to establish tort liability, a plaintiff must initially prove the existence and breach of a duty owed to him by the defendant. *Abalos v. Oil Dev. Co. of Tex*., 544 S.W.2d 627, 631 (Tex. 1976). As a general rule, one person is under no duty to control the conduct of another, RESTATEMENT (SECOND) OF TORTS § 315 (1965), even if he has the practical ability to exercise such control. *Trammell v. Ramey*, 231 Ark. 260, 329 S.W.2d 153 (1959). Yet, certain relationships do impose, as a matter of law, certain duties upon parties. *See e.g*., RESTATEMENT (SECOND) §§ 316-20. For instance, the master-servant relationship may give rise to a duty on the part of the master to control the conduct of his servants outside the scope of employment. This duty, however, is a narrow one. **Ordinarily, the employer is liable only for the off-duty torts of his employees which are committed on the employer's premises or with the employer's chattels.** RESTATEMENT (SECOND) § 317.

*Id.* at 309 (emphasis added). This is the extent of the majority's discussion of Section 317.

Without acknowledging that *Otis* was decided on other grounds, Salinas maintains that the above-quoted reference to Section 317 controls the instant case. In support of this argument,

Salinas also cites four subsequent cases in which courts have repeated the above-bolded language. *See, e.g., Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404-05 (Tex. 2009) ("An employer ordinarily will not be liable for torts committed by off-duty employees except when the torts were committed on the employer's premises or with the employer's chattels."); *Loram Maintenance of Way, Inc. v. Ianni*, 210 S.W.3d 593, 596 (Tex. 2006) ("typically an 'employer is liable only for the off-duty torts of his employees which are committed on the employer's premises or with the employer's chattels'"); *Ginther v. Domino's Pizza, Inc.*, 93 S.W.3d 300, 304 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) ("An employer is only liable for its employees' off-duty torts when they are committed on the employer's premises or with the employer's chattels."); *Darensburg v. Tobey*, 887 S.W.2d 84, 90 (Tex. App.—Dallas 1994, writ denied) ("For example, employers are liable for the negligence of off-duty employees, even though they lack control over their off-duty behavior, if the tort is committed on the employer's premises or with the employer's chattels."). None of these cases, however, discuss or analyze Section 317 or what Salinas refers to as "the *Otis Engineering* duty." In fact, none of the cases involve an employee's off-duty tort while on his employer's premises. In *Nabors*, the complained-of accident occurred off the employer's premises while the off-duty employee was driving his personal vehicle. *Nabors*, 288 S.W.3d at 404. Likewise, in *Ianni*, there was no contention that the shooting incident complained of occurred at a site controlled by the employer or that the off-duty employee was using company equipment at the time of the shooting. *Ianni*, 210 S.W.3d at 596 n.3. In *Ginther*, the plaintiffs' teenage daughter was killed when the vehicle she was riding in struck a stalled car on the freeway; the stalled car was driven and owned by an off-duty pizza delivery driver. *Ginther*, 93 S.W.3d at 302-03. The court of appeals affirmed the summary judgment granted by the trial court, holding that the employer did not have a common

law duty to determine the mechanical reliability of the vehicles used by its delivery drivers or to ensure that its drivers maintained liability insurance on their vehicles. *Id*. at 305. The tort in *Darensburg* was committed on the employer's premises; however, the allegedly-negligent employee was undisputedly on-duty at the time. *Darensburg*, 887 S.W.2d at 85-86. In sum, although the cases relied on by Salinas repeat the dicta used in *Otis Engineering*, none involve a factual scenario where an off-duty employee commits a tort on the employer's premises. Therefore, these cases neither expound on the duty owed by an employer when his off-duty employee commits a tort on its premises, nor support Salinas's argument that Briggs Ranches is liable for its employee's conduct without any further showing than that the tort was committed on Briggs Ranches' property.

### *Section 317 of the Restatement of Torts*

Finding no support for Salinas's reading of *Otis Engineering* in case law, we turn to the Restatement. The actual text of Section 317 of the Restatement of Torts, entitled "Duty of Master to Control Conduct of Servant," provides:

> A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, **if**
> (a) the servant
>    (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
>       (ii) is using a chattel of the master, **and**
> (b) the master
>    (i) knows or has reason to know that he has the ability to control his servant, **and**
>       (ii) knows or should know of the necessity and opportunity for exercising such control.

RESTATEMENT (SECOND) OF TORTS § 317 (1965) (emphasis added). Thus, Section 317 provides that a master is under a duty to use reasonable care to control the actions of his servant while the

servant is acting outside the scope of his employment to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, *if* the servant is on the master's premises *and* the master knows or has reason to know that he has the ability to control his servant, *and* knows or should know of the necessity and opportunity for exercising such control. *Foradori v. Harris*, 523 F.3d 477, 488 (5th Cir. 2008).

We have located only one Texas case that elaborates on the Section 317 duty of an employer to control the actions of its off-duty employee when the employee is on the employer's premises or using the employer's chattels. In *Maclay*, a medical partnership was sued because one of the physician partners alienated the affections of a patient's mother. *Kelsey-Seybold Clinic v. Maclay*, 466 S.W.2d 716, 717 (Tex. 1971). The Court affirmed the judgment of the court of appeals reversing a summary judgment in favor of the clinic, stating:

> We are also of the opinion that the Clinic owed a duty to the families of its patients to exercise ordinary care to prevent a tortious interference with family relations. It was not required to maintain constant surveillance over personnel on duty or to inquire into and regulate the personal conduct of partners and employees while engaged in their private affairs. ***But if and when the partnership received information from which it knew or should have known that there might be a need to take action, it was under a duty to use reasonable means at its disposal to prevent any partner or employee from improperly using his position with the Clinic to work a tortious invasion of legally protected family interests.*** This duty relates only to conduct of a partner or employee on the premises of the Clinic or while purportedly acting as a representative of the Clinic elsewhere. Failure to exercise ordinary care in discharging that duty would subject the Clinic to liability for damages proximately caused by its negligence. *See* RESTATEMENT, SECOND, TORTS, § 317.

*Id.* at 720 (emphasis added). The *Maclay* court thus made clear that under Section 317, an employer may be liable for its own negligence in failing to exercise reasonable care over the conduct of its employee on the employer's premises only when the employer receives information from which it knows or should know of the necessity for such control. *See id.*

The Fifth Circuit has also analyzed an employer's duty to control the conduct of its off-duty employee while on the employer's premises. In *Foradori v. Harris,* an off-duty restaurant employee challenged a customer, Michael Foradori, to a fight. *Foradori*, 523 F.3d at 481-82. The two had a loud and heated verbal argument inside the restaurant that lasted between fifteen and twenty minutes. *Id.* at 482. The restaurant manager heard and observed the confrontation. Rather than defusing the situation, the manager instead ordered the two outside and permitted a crowd, including employees and customers, to follow them outside. *Id.* The manager did not call the police or take other precautions. The cook believed a fight was about to occur and followed the crowd outside. *Id.* As soon as Foradori reached the edge of the parking lot, another off-duty restaurant employee unexpectedly punched Foradori from behind. *Id.* at 491. Foradori's fall from an elevated embankment rendered him unconscious, broke his neck, and resulted in his quadriplegia. *Id.* at 482.

Applying Section 317, the Fifth Circuit found that the restaurant had a duty to control its off-duty employees so as to protect patrons like Foradori from any foreseeable unreasonable risk of harm created by those employees, because the employees' conduct occurred on the restaurant's premises, and the jury reasonably could have found that the restaurant manager knew or had reason to know that she had the ability to control them, and knew or should have known of the necessity and opportunity for exercising such control. *Id.* at 492.

### Did Briggs Ranches Owe a Section 317 Duty to Salinas?

Having determined the duty imposed upon an employer under Section 317, we must now decide whether, under the facts of this case, Briggs Ranches owed a duty to Salinas to control the conduct of its employee, Ochoa. In any negligence case, duty is the threshold inquiry. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987). "[D]uty is the function of several interrelated

- 12 -

factors, the foremost and dominant consideration being foreseeability of the risk." *Id.* (citing *Otis Eng'g*, 668 S.W.2d at 309; *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex. 1983)); *see also Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654, 659 (Tex. 1999) (noting that foreseeability is an essential component of duty). The test for foreseeability is what one should under the circumstances reasonably anticipate as a consequence of his or her conduct. *Foster v. Denton Indep. Sch. Dist.*, 73 S.W.3d 454, 465 (Tex. App.—Fort Worth 2002, no pet.). "[T]he existence of duty is a question of law for the court to decide from the facts surrounding the occurrence in question." *Ianni*, 210 S.W.3d at 598 n.5 (quoting *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990)); *Otis Eng'g*, 668 S.W.2d at 312. The existence of duty only becomes a question for the jury when the evidence about foreseeability as it relates to duty is disputed. *Union Pac. R.R. Co. v. Williams*, 85 S.W.3d 162, 169 (Tex. 2002).

Thus, turning to the case before us, in order to establish that Briggs Ranches owed a duty to Salinas under Section 317, Ochoa's conduct in causing the fatal accident must have been reasonably foreseeable to Briggs Ranches. *See* RESTATEMENT (SECOND) OF TORTS § 317(b)(ii). We conclude that the evidence at trial established as a matter of law that Ochoa's conduct in causing the accident was not foreseeable to Briggs Ranches. First, other than Ochoa and his wife, no one from the ranch was present on the night of the accident, and could not have known that Ochoa was drinking with the Lane & Reeves crew and making beer runs in his personal vehicle. Accordingly, the ranch did not have actual knowledge of a need to control Ochoa. In addition, there was no evidence that Briggs Ranches should have anticipated that Ochoa would drink and drive at an excessively high rate of speed on the ranch. Ochoa was interviewed and hired by the ranch manager based on a recommendation. Ochoa was not expected to drive ranch vehicles, and therefore the ranch did not examine his driving record. Further, the ranch did not

have reason to investigate Ochoa's criminal background, and even if it had, it would not have discovered any previous DWI incidents because Ochoa was never arrested or prosecuted for DWI. The criminal violations on his record, including unauthorized use of a motor vehicle, were remote in time and different in kind from his actions on the night of the accident. *See Barton v. Whataburger, Inc.*, 276 S.W.3d 456, 463-64 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (holding that employee's two prior felony convictions for delivery of crack cocaine did not make his participation in violent robbery and murder on employer's premises foreseeable to employer); *Houser v. Smith*, 968 S.W.2d 542, 545 (Tex. App.—Austin 1998, no pet.) (employee's previous forgery convictions did not make employee's assault of woman on employer's property reasonably foreseeable to employer). And although Salinas contends the "Renteria incident" establishes foreseeability, we disagree. To the contrary, that incident illustrates that Briggs Ranches observed that Ochoa chose **not** to drive after drinking.

Based on the undisputed evidence at trial, Briggs Ranches did not know, or have reason to anticipate, that Ochoa would consume alcohol and then drive his car at a high rate of speed, thus causing a fatal accident. Accordingly, there is no evidence of foreseeability. Absent foreseeability, Salinas cannot establish the duty element of a Section 317 cause of action. Because we conclude that the evidence at trial established as a matter of law that Ochoa's conduct was not foreseeable to Briggs Ranches, the trial court should not have submitted Question No. 3 to the jury, and therefore the question was immaterial. *See Southeastern Pipe Line Co. v. Tichacek*, 997 S.W.2d 166, 172 (Tex. 1999) (a question is immaterial when it should not have been submitted because it calls for a finding beyond the province of the jury, such as a question of law); *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994).

Given that Question No. 3 was immaterial, Salinas's complaint that the jury erred in answering the question in the negative is overruled.

## CONCLUSION

Based on the foregoing, we overrule Salinas's issues on appeal and affirm the judgment of the trial court.

Phylis J. Speedlin, Justice